OPINION OF THE COURT
 

 Simons, J.
 

 Petitioner was formerly a partner in respondent but now is a member of another firm. He contends that respondent owes him a supplemental payment, authorized for withdrawing partners under the Milbank, Tweed Articles of Partnership, and that its denial of the payment constitutes an impermissible forfeiture of earned but undistributed income and an impermissible restraint on the practice of law under the rule in
 
 Cohen v Lord, Day & Lord
 
 (75 NY2d 95) and similar cases. Respondent claims that petitioner is not entitled to any withdrawal payments because the amount of his annual income at his new firm forecloses payments under the Milbank, Tweed scheme (which reduces the amount of the supplemental payments in proportion to a withdrawing partner’s new earned income) and that the provisions of the partnership’s agreement are not unlawfully anticompetitive.
 

 The matter was submitted to an arbitrator, as required by the partnership agreement. He concluded after a hearing that the agreement was enforceable and that under its terms petitioner was not entitled to any supplemental withdrawal payments.
 

 Petitioner then instituted this proceeding challenging both the arbitrator’s power to resolve the question and his determination in respondent’s favor. The courts below vacated the arbitrator’s award, holding that the sums authorized by the agreement represented a withdrawing partner’s share of undistributed earned income and thus any provision in the partnership agreement reducing them constituted a forfeiture for competition which violated public policy.
 

 There is a second, and arguably stronger, policy concern in this case, however, the public policy favoring arbitration. Under the parties’ broad arbitration agreement, whether the supplemental payment represents earned but undistributed income and whether the supplemental payment agreement
 
 *150
 
 constitutes a noncompetition clause were matters to be decided in the first instance by the arbitrator. The question before us, therefore, is whether, bearing in mind the strong public policy favoring arbitration, there exists any ground on which to vacate the arbitrator’s determination upon subsequent judicial review.
 

 We conclude that the courts below erred in granting petitioner’s motion to vacate. The arbitrator’s award, whether or not its factual conclusions are correct, does not on its face violate the public policy against restrictions on the practice of law. Accordingly, we reverse the order of the Appellate Division.
 

 I.
 

 The focus of this litigation is section 15.4 of the 30th Amendment to the Milbank, Tweed Articles of Partnership.
 

 In order to avoid the dissolution and subsequent accounting which would ordinarily follow a partner’s departure, many law firms, respondent among them, include in their articles of partnership an agreement under which a withdrawing partner waives his or her right to an accounting in exchange for certain payments specified in the articles. Milbank, Tweed’s agreement provides for several types of payments to departing partners: repayment of capital, distribution of undistributed net profits, and, in section 15.4, supplemental payments upon withdrawal or death. Payments awarded by section 15.4 equal 150% of the withdrawing partner’s final percentage of the firm’s profits, calculated by averaging the firm’s net profit for the three years preceding the withdrawal, and are spread out over a period of five years. A withdrawing partner below retirement age must have served a prescribed period with the firm. The total payments to all withdrawing partners are capped out at 3% of the firm’s annual net income.
 

 Originally, the Articles of Partnership provided in the 28th Amendment that only those withdrawing partners retiring from the practice of law were entitled to the supplemental payments. In
 
 Cohen v
 
 Lord,
 
 Day & Lord (supra),
 
 however, we held that a provision of a law firm partnership agreement that "condition[ed] payment of earned but uncollected partnership revenues” upon the withdrawing partner’s obligation to refrain from competition with the former law firm constituted an unenforceable restraint on the practice of law in
 
 *151
 
 violation of DR 2-108 (A) (22 NYCRR 1200.13 [a])
 
 (id.,
 
 at 96).
 
 [1]
 
 Accordingly, Milbank, Tweed altered its partnership agreement on October 1, 1990, by enacting the 30th Amendment to the Articles. Under this Amendment, the supplemental payments are available to all withdrawing partners, whether retiring or entering new employment; however, the payments are reduced dollar-for-dollar to the extent that the withdrawing partner’s annual earned income, from any source, exceeds $100,000.
 

 In January 1991, petitioner, a Milbank, Tweed partner since 1982, withdrew from the firm to become a partner at Fried, Frank, Harris, Shriver & Jacobson. He received repayment of his capital contribution and a share of undistributed net profits calculated according to the formula specified in the Articles of Partnership but not benefits under section 15.4. He subsequently demanded an additional $641,339 for these supplemental payments.
 
 [2]
 
 Respondent rejected petitioner’s claim and demanded arbitration, contending that the 30th Amendment applied to petitioner and that the amount of petitioner’s annual compensation from Fried, Frank precluded his receiving any supplemental payment.
 

 Petitioner then sought to stay the arbitration, contending that the 28th Amendment, not the 30th Amendment, applied, and that because the limitation of supplemental payments to retiring partners in that earlier Amendment was an impermissible noncompetition agreement, the agreement was unenforceable as against public policy. Alternatively, petitioner contended that even if the 30th Amendment applied to him, its dollar-for-dollar reduction deprived withdrawing partners of already earned but undistributed income to which they were entitled. Thus, in petitioner’s view, the 30th Amendment was also unenforceable as a "forfeiture-for-competition” clause under our ruling in
 
 Cohen v Lord, Day & Lord (supra).
 

 
 *152
 
 Supreme Court granted petitioner’s motion to permanently stay the arbitration, ruling that pursuant to
 
 Cohen
 
 both the 28th and 30th Amendments violated DR 2-108 (A), and the Appellate Division affirmed. We reversed, holding that the broad arbitration clause of the parties’ agreement, and the existence of disputed factual issues, required that the controversy be decided in the first instance by the arbitrator
 
 (see, Hackett v Milbank, Tweed, Hadley & McCloy,
 
 80 NY2d 870). In denying the petition, we noted that petitioner’s argument that an arbitration decision denying him benefits would be contrary to public policy was insufficient to preempt the arbitration: the arbitrator’s decision, once made, could be subsequently challenged on a motion to vacate or confirm. By this proceeding petitioner now challenges the arbitrator’s determination.
 

 The arbitrator held first that the 30th Amendment was applicable to petitioner’s claim to supplemental payments. The parties do not dispute that determination. In the second phase of the arbitration, the arbitrator heard the testimony of nine witnesses over a period of several days, and received more than 1,200 pages of exhibits. In reviewing the history of the Milbank, Tweed partnership agreement, he concluded that section 15.4 as originally conditioned under the 28th Amendment was a noncompetition provision, and intended as such. He noted that under the new provision, however, the withdrawal payments "include a series of limitations on eligibility and amounts of payments (in addition to the earnings set-off) that are inconsistent with an intention to approximate a share of undistributed earned income.” Thus, he determined that the withdrawal payment presently contemplated by the amended Articles of Partnership was intended primarily to "provide insurance to withdrawing partners” (even though it was also drafted with an eye to denying withdrawal payments to competitive former partners) and did not run afoul of
 
 Cohen.
 
 In his words:
 

 "[t]he Partnership makes no bones about the fact that a primary motive for adopting the provisions of § 15.4 was to avoid payments to withdrawing partners who competed while at the same time both (1) complying with DR 2-108A as interpreted in
 
 Cohen
 
 and (2) providing a 'safety net’ for partners who left for lower-income pursuits.”
 

 The arbitrator concluded that the provisions for payment under section 15.4 "looked at in their entirety” are not now
 
 *153
 
 intended to represent a withdrawing partner’s share of undistributed earned income; thus, the agreement does not work the type of forfeiture that rendered the agreement at issue in
 
 Cohen
 
 unenforceable. Instead, it was intended primarily to provide an economic safety net for partners departing to less lucrative positions.
 

 The arbitrator’s conclusion was based in part on a Milbank, Tweed "Memorandum to the Partners” circulated by the committee formed to consider changes in the firm’s provision for supplemental payment after the
 
 Cohen
 
 ruling had rendered the existing provision unenforceable. The Memorandum noted that two equally undesirable alternatives were available: to eliminate the payment altogether, or to give it to all departing partners. Although the Memorandum concluded that retaining the payment would also retain the possibility of providing it to some withdrawing partners who would in the future compete with Milbank, Tweed, it nevertheless determined that "[elimination of the payment, while arguably in the best interests of the Firm, deprives the active partners of the safety net the Firm has long provided in the event the partner chooses a different life style.” By tying the amount of the withdrawal payment to the departing partner’s new earned income from any source, the committee hoped to greatly reduce the probability of payments to partners who leave to compete with the firm, while remaining within the boundaries set out in
 
 Cohen.
 

 Accordingly, based on the testimony and exhibits before him, including expert testimony on the nature of the payments and their competitive effect, the arbitrator found that the supplemental payments available to withdrawing partners "were not intended to, and do not, constitute an approximation of the withdrawing partner’s share of undistributed earned income.”
 

 Finally, the arbitrator determined that section 15.4 did not restrict the practice of law and is "competition neutral,” because the dollar-for-dollar reduction is applied without regard to the source of the withdrawing partner’s earned income. In response to petitioner’s contention that most withdrawing partners going into competitive employment would be compensated at a level sufficiently high to make them ineligible to receive the payments, the arbitrator stated that the reduction in payments no more restricts the practice of law
 
 *154
 
 than if the Milbank, Tweed agreement provided no withdrawal payments at all, an arrangement that even petitioner’s expert witness agreed would not violate DR 2-108 (A). Under
 
 Cohen,
 
 he stated, a violation of DR 2-108 (A) has two necessary elements: (1) forfeiture of an interest already earned because of (2) competition with the former firm. Because both elements were absent here, the arbitrator concluded that the 30th Amendment was enforceable against petitioner.
 

 In moving to vacate the award, petitioner alleged that the arbitrator’s factual findings and conclusions were irrational and that he had exceeded his powers and rendered an award in violation of public policy. Supreme Court rejected the arbitrator’s conclusions, and found "contrary to the finding of the arbitrator” that the withdrawal payment "constitute[s] an approximation of the withdrawing partner’s share of undistributed earned income,” and that section 15.4 is an unenforceable forfeiture and a restriction on the practice of law. Accordingly, it vacated the award solely on the ground that it violated the public policy expressed in DR 2-108 (A).
 

 II.
 

 Preliminarily, we note that the matter before us is governed by New York law. Respondent contends that the partnership agreement comes within the scope of the Commerce Clause, because it applies to partners in the firm’s offices located in various States and countries, and that it is accordingly governed by the Federal Arbitration Act
 
 (see, Allied-Bruce Terminix Cos. v Dobson,
 
 513 US —, 115 S Ct 834). The overriding policy of the Act, however, is the enforcement of arbitration agreements according to their terms, including the parties’ choice of governing law
 
 (see, Volt Information Sciences v Leland Stanford Jr. Univ.,
 
 489 US 468;
 
 Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith,
 
 85 NY2d 173). The parties’ agreement here not only provided for binding arbitration of their dispute, it explicitly provided that New York law would govern that arbitration, and that the only grounds for vacating the arbitrator’s award are those encompassed by CPLR 7509 and CPLR 7511. Such an explicit and unambiguous choice of law in an arbitration agreement must be given effect
 
 (see, Volt Information Sciences supra; cf., Mastrobuono v Shearson Lehman Hutton,
 
 514 US —, 115 S Ct 1212).
 

 Under CPLR 7511, an award may be vacated only if (1) the rights of a party were prejudiced by corruption, fraud or
 
 *155
 
 misconduct in procuring the award, or by the partiality of the arbitrator; (2) the arbitrator exceeded his or her power or failed to make a final and definite award; or (3) the arbitration suffered from an unwaived procedural defect. Even where the arbitrator makes a mistake of fact or law, or disregards the plain words of the parties’ agreement, the award is not subject to vacatur "unless the court concludes that it is totally irrational or violative of a strong public policy” and thus in excess of the arbitrator’s powers
 
 (see, Maross Constr. v Central N. Y. Regional Transp. Auth.,
 
 66 NY2d 341, 346;
 
 see also, Matter of Silverman [Benmor Coats],
 
 61 NY2d 299, 308;
 
 Matter of Sprinzen [Nomberg],
 
 46 NY2d 623, 631;
 
 Garrity v Lyle Stuart, Inc.,
 
 40 NY2d 354, 357).
 

 Supreme Court erred in substituting its own characterization of the supplemental payments as "an approximation of the withdrawing partner’s share of undistributed earned income” for the contrary finding of the arbitrator. Although the court noted correctly that "mere labels” or a party’s statement of contrary intent will not insulate a forfeiture clause from invalidation, an arbitrator’s factual or legal determination is an evaluation of the competing labels and claims offered by the parties, and as such is not subject to judicial second-guessing, but only to a review to determine whether the award is on its face prohibited by public policy considerations
 
 (see, Matter of Sprinzen [Nomberg],
 
 46 NY2d 623, 631,
 
 supra; see also, Maross Constr. v Central N. Y. Regional Transp. Auth.,
 
 66 NY2d 341, 346,
 
 supra; Matter of Port Wash. Union Free School Dist. v Port Wash. Teachers Assn.,
 
 45 NY2d 411, 417, 422). Accordingly, the only question before us is whether the courts below correctly concluded that the arbitrator’s award violated public policy.
 
 [3]
 

 In
 
 Denburg v Parker Chapin Flattau & Klimpl
 
 (82 NY2d 375), we considered the validity of a provision in the Parker Chapin partnership agreement that bears some similarities to respondent’s agreement. The Parker Chapin agreement required withdrawing partners to make certain payments to the firm upon demand: if the withdrawing partner practiced law
 
 *156
 
 in the private sector prior to July 1988, he or she was to pay the firm either (1) 12.5% of the firm’s profits allocated to that partner over the two previous years or (2) 12.5% of any billings to former Parker Chapin clients by the partner’s new firm during the ensuing two years, whichever amount was greater. An exception was provided for withdrawing partners whose previous year’s profit share was less than $85,000, providing that the partner’s new firm did no work for Parker Chapin clients during the two-year period following withdrawal.
 

 Assessing this agreement in the light of
 
 Cohen v Lord, Day & Lord (supra),
 
 we concluded that the provision violated the public policy against anticompetition clauses. This was so, we said, because the provision, by its terms, applied only to withdrawing partners who went into private practice, and hence into potential competition with Parker Chapin; it required the payment of the higher of two possible amounts, one of which was "directly proportional to the success of a departing partner’s competitive efforts”; and the exemption for a low-paid partner applied only if no Parker Chapin clients were served (82 NY2d, at 381). Recognizing Parker Chapin’s argument that no noncompetitive effect was intended, we nevertheless determined that the agreement was unenforceable because the effect of the clause was to improperly deter competition.
 

 Unlike the clauses disapproved in
 
 Cohen
 
 and in
 
 Denburg,
 
 the Milbank, Tweed supplemental payment provision is not inevitably anticompetitive on its face. Where the Parker Chapin clause clearly discriminated between partners departing for private practice and those, for example, entering academia or government service, section 15.4 makes no such distinction: the reduction in supplemental payments applies to the withdrawing partner’s earned income from any source. Where the Parker Chapin clause exempting lower-paid partners from the agreement was applicable only to those lower-paid partners who did not subsequently do work for former Parker Chapin clients, the Milbank, Tweed $100,000 cutoff applies to all withdrawing partners and no financial disincentive specifically devolves on partners withdrawing to compete with Milbank, Tweed in contrast to all other withdrawing partners.
 

 We noted in
 
 Cohen
 
 that a contested provision must be assessed within its own particular litigation context
 
 (see,
 
 75
 
 *157
 
 NY2d, at 102), and the arbitrator’s determination here that section 15.4 is "competition neutral” does not on its face contravene the public policy concerns underlying our rulings in
 
 Cohen
 
 and in Denburg.
 
 [4]
 

 Further support for the conclusion that the anticompetition policy may yield to other public policy concerns may be found in
 
 Denburg.
 
 Although the Parker Chapin partnership agreement was unenforceable as against public policy, we nevertheless remitted the matter for the determination of certain factual issues concerning a purported settlement agreement under which Parker Chapin contended the plaintiff had agreed to settle any obligation to the firm by yielding the balance in his capital account. Because of the strong policy considerations favoring the routine enforcement of voluntary settlements, we concluded that "an agreement to settle a dispute involving a forfeiture-for-competition provision may be enforced even though the clause itself is unenforceable,” and that "public policy is best served by permitting parties to amicably resolve disputes arising under such provisions rather than forcing each such controversy to be decided by the judiciary” (82 NY2d, at 385).
 

 Similar concerns underlie our strong public policy favoring arbitration. Where the parties have agreed to submit their dispute to binding arbitration, an award that is not clearly in violation of public policy should be given effect
 
 (see, Westinghouse Elec. Corp. v New York City Tr. Auth.,
 
 82 NY2d 47, 53;
 
 Matter of Siegel,
 
 40 NY2d 687, 689). The arbitrator’s award
 
 *158
 
 here both factually and legally answers the public policy challenge raised by petitioner. Whether or not we agree with his findings and conclusions, the award does not on its face clearly violate public policy, and should not have been vacated on that basis.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.
 

 Judges Titone, Bellacosa, Levine and Ciparick concur; Chief Judge Kaye and Judge Smith taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . DR 2-108 (A) of the Code of Professional Responsibility provides: "[a] lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.”
 

 [2]
 

 . Petitioner claims that he is entitled to supplemental payments of $128,268 per year for five years. Under the agreement’s formula for calculating withdrawal payments, petitioner would not be entitled to any supplemental payment in a year in which he earned over $228,268. Because petitioner’s compensation at Fried, Frank far exceeds this sum, the formula provides him no withdrawal payments.
 

 [3]
 

 . Petitioner’s belated challenge to the impartiality of the arbitrator is not properly before us on this appeal, for lack of preservation. Although petitioner alleged that the arbitrator’s award was irrational as well as against public policy, Supreme Court addressed only the public policy ground for vacatur. Thus, disposition of the question whether the award was irrational requires a remittal to Supreme Court.
 

 [4]
 

 . To support his contention that
 
 Cohen
 
 and
 
 Denburg
 
 render section 15.4 unenforceable, petitioner points to three New Jersey cases and an Iowa case, all distinguishable. In Weiss v
 
 Carpenter, Bennett & Morrissey
 
 (275 NJ Super 393, 646 A2d 473
 
 [appeal pending]),
 
 the court ruled unenforceable a clause in a partnership agreement requiring a partner who withdraws for any reason other than death, disability or judicial appointment to forfeit shares of both capital equity and earnings; the agreement thus discriminated against potentially competitive withdrawing partners. In
 
 Katchen v Wolff & Samson
 
 (258 NJ Super 474, 610 A2d 415,
 
 cert denied
 
 130 NJ 599, 617 A2d 1222), the court ruled unenforceable a clause requiring forfeiture of a partner’s equity interest on withdrawal, although it applied to all withdrawing partners;
 
 Katchen,
 
 however, involved a clear forfeiture of an equity interest already vested in the withdrawing partner. The arbitrator in fact specifically differentiated
 
 Katchen,
 
 and another New Jersey case
 
 (Jacob v Norris, McLaughlin & Marcus,
 
 128 NJ 10, 607 A2d 142) on the basis that in those cases a withdrawing partner forfeited "an interest previously earned or acquired.” Similarly,
 
 Anderson v Aspelmeier, Fisch & Power
 
 (461 NW2d 598 [Iowa]) involved the forfeiture of a withdrawing partner’s equity interest.