OPINION OF THE COURT
Barry A. Cozier, J.
Petitioner, Julian Markby (Markby), brings this proceeding pursuant to CPLR 7511 for a judgment vacating that portion of an arbitration award issued by a New York Stock Exchange (NYSE) arbitration panel which denied certain specified claims asserted by Markby against PaineWebber Incorporated (PaineWebber) and PW Partners 1993, L.P. (PW Partners) his former employers and members of the NYSE. Respondents oppose the petition and cross-move to confirm the arbitration award.
Background
The facts underlying the instant proceeding are as follows. In April 1990, petitioner commenced his employment for PaineWebber in its investment banking division and eventually became a managing director within the division. In connection with his employment, petitioner was eligible to receive benefits under PaineWebber’s stock plan (Stock Plan) and PaineWebber’s investment banking division incentive compensation plan (Incentive Compensation Plan). Further, petitioner was permitted to participate as a limited partner in the PW Partners, a limited partnership formed by PaineWebber Partners II, Inc., as general partner, and certain limited partners for the purpose of acquiring investments.
In late 1994, PaineWebber acquired Kidder Peabody & Company (Kidder). Subsequently, PaineWebber terminated numerous PaineWebber and Kidder employees who allegedly had overlapping roles and responsibilities, and effective March *175 30, 1995, terminated the petitioner. Respondent provided petitioner with a separation agreement and general release (Severance Agreement) which offered petitioner, inter alia: (1) a lump-sum severance payment in the gross amount of $9,615, less all applicable deductions; (2) out-placement services for a period of three months; and (3) a one-time service payment in the-gross amount of $14,423, less all applicable deductions. The Severance Agreement further stated that it was to take effect on the eighth day following its execution by petitioner and included a waiver of all claims against respondent for additional compensation. PaineWebber also offered, in the exercise of its sole discretion, the continued vesting of petitioner’s unvested interest in certain compensation and benefit plans in return for petitioner’s execution of the agreement.
Petitioner refused to sign the Severance Agreement and commenced an arbitration proceeding before the NYSE, alleging claims for unjust termination and severance benefits. In his notice of intention to arbitrate and demand for arbitration, petitioner alleged nine claims for severance benefits and unpaid compensation for an aggregate amount in excess of $2 million. Further, petitioner argued that PaineWebber inexcusably and unjustifiably discriminated against him in the determination of his severance benefits, and that PW Partners intentionally appropriated his share of the profits in the partnership.
Specifically, petitioner sought an award declaring that he was fully vested in PaineWebber’s: (claim No. 1) pension plan; (claim No. 2) Stock Plan; and (claim No. 3) Incentive Compensation Plan. Petitioner also sought a declaration that he was entitled to: (claim No. 4) a bonus of at least $325,000 for the period January 1, 1995 to March 30, 1995; (claim No. 5) compensation of at least $2 million based on PaineWebber’s investments in a company named Bell Cablemedia; and (claim No. 6) a portion of the investment banking fees, commissions or other compensation paid to PaineWebber by several account holders. Petitioner further sought a declaration that he was entitled to: (claim No. 7) the fair market value of the profits from his investment in PW Partners; and (claim No. 8) that he was entitled to a severance "service payment” in an amount not less than $14,423. In addition, petitioner sought to recover attorney’s fees, costs and expenses. Respondents counterclaimed against petitioner for attorney’s fees based on his rejection of the proposed Severance Agreement and argued that under the terms of the various applicable compensation and *176 benefit plans, those shares that had previously been awarded to petitioner which had not vested at the time of petitioner’s termination were forfeited.
The NYSE arbitration panel conducted hearings on February 20, 1996 and April 10, 1996. Petitioner testified on his own behalf, and Robert Pangia, PaineWebber’s senior investment banker, testified on behalf of respondents. In addition, both parties submitted documents to support their positions as to the contested severance benefits.
Arbitration Award
The NYSE arbitration panel issued an award, dated April 10, 1996, granting the petitioner’s: (claim No. 1) claim for pension benefits; (claim No. 2) claim under the Stock Plan to the extent of declaring that petitioner is entitled to 3,013 shares of PaineWebber stock; (claim No. 3) claim under the Incentive Compensation Plan to the extent of declaring that petitioner is entitled to participate in certain specified "warrant units”; and (claim No. 8) claim for severance service payments in the amount of $14,423. The arbitration panel denied the remaining claims, directed each side to bear its own attorney’s fees, and assessed NYSE forum fees against PaineWebber.
The petition herein challenges the partial denials of his claims under the Stock Plan (claim No. 2) and the Incentive Compensation Plan (claim No. 3), as well as the full denial of his claim for partnership profits (claim No. 7). With respect to the Stock Plan, the evidentiary proof presented at the hearings demonstrated that petitioner participated in PaineWebber’s Stock Plan and was periodically awarded shares of PaineWebber’s group restricted stock, including a total 16,219 shares scheduled to vest on January 31, 1996 (6,912 shares), January 31,1997 (5,807 shares) and January 31, 1998 (3,500 shares). The Stock Plan authorized the compensation committee of the Board of Directors of PaineWebber (Committee) to administer the plan, and further provided that "[t]he Committee shall have full and final authority * * * to select Participants, grant Awards, determine the type, number, and other terms and conditions of, and all other matters relating to, Awards.” The Stock Plan contained an automatic forfeiture provision requiring forfeiture of unvested restricted stock if the stock recipient was terminated before the scheduled vesting period.
Further, on February 8, 1995 petitioner executed an Incentive Compensation Plan pursuant to which he was awarded certain "units” that corresponded to warrants and securities *177 granted to PaineWebber by various companies. Petitioner’s participation in the Incentive Compensation Plan was governed by the express terms of that plan. By executing the Incentive Compensation Plan and accepting the grant of units, petitioner agreed to abide by the terms and provisions of the plan. Pursuant to section 7.4 (a) of the Incentive Compensation Plan: "33-1/s% of the Units shall be vested as of the first anniversary date on which such Units are granted and an additional 33-1/s % of such Units shall be vested on each of the two next succeeding anniversaries of such date of grant; provided, however, that the Committee may accelerate vesting or set such other vesting periods as it may deem appropriate.” A vesting schedule for the warrant units awarded to petitioner was appended to the Incentive Compensation Plan. In the event that a participant of the Incentive Compensation Plan was terminated, section 7.4 (c) directed that the participant was entitled to retain all units which vested as of the date of termination, and that all unvested units were canceled as of the date of termination. Respondents asserted that as of the date of petitioner’s termination, only one third of his units had vested.
Regarding the claim for partnership profits, on February 2, 1994, petitioner executed a limited partnership agreement to become a limited partner in PW Partners, and made a capital contribution of $50,000. Petitioner’s rights and liabilities as a limited partner in PW Partners were enumerated in the agreement, section 7.01 of which empowered the general partner to "invite any Person to become a Limited Partner.” Pursuant to section 7.02 (a), a limited partner remained "entirely unvested” in limited partnership interest until the fifth anniversary of the limited partner’s first capital contribution date. After the fifth anniversary, the limited partner’s interest in the partnership became "entirely vested”. Under section 6.02 (b), the liability of each partner was limited to the aggregate amount of his capital contribution.
Where the employment of the limited partner was terminated for any reason, section 7.02 (b) authorized the general partner to purchase for cash that limited partner’s interest in the partnership. Furthermore, where the termination occurred before the limited partner’s interest became entirely vested, the limited partner was entitled to recover the lesser of (A) the amount in the limited partner’s capital account, calculated as of the last business day of the partnership’s fiscal quarter in which the limited partner ceased to be employed by PaineWebber, or (B) the sum of the limited partner’s capital contribu *178 tion. Respondent PW Partners asserted that since petitioner was terminated prior to the expiration of the five-year vesting period, it remitted to petitioner a check in the amount of $50,000 for his capital contribution in the partnership.
Petitioner argues that the arbitration award violates public policy against the forfeiture of earned compensation and, in addition, he asserts that he generated a sizable amount of business for PaineWebber during the three months before his termination, and that profits from this business were realized by PaineWebber. Respondents oppose the application and cross-move to confirm the arbitration award. Respondents do not dispute that petitioner was a key contributor. However, they maintain that the contested severance benefits were not earned wages and thus the arbitration award denying petitioner’s claims does not violate the public policy against forfeiture of earned wages.
Discussion
I.
CPLR 7511 enumerates the grounds for vacating an arbitration award. CPLR 7511 (b) (1) provides:
"The award shall be vacated * * * if the court finds that the rights of that party were prejudiced by:
"(i) corruption, fraud or misconduct in procuring the award; or
"(ii) partiality of an arbitrator appointed as a neutral * * * or
"(iii) an arbitrator * * * exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or
"(iv) failure to follow the procedure of this article”.
It is well settled that in the absence of fraud, "corruption or other misconduct, an arbitration award may not be impeached because of arbitrator error as to the law or facts.” (Integrated Sales v Maxell Corp., 94 AD2d 221, 224 [1st Dept 1983].)
The "laudable purposes served by permitting consenting parties to submit controversies to arbitration” have long been recognized in New York. (Matter of Sprinzen [Nomberg], 46 NY2d 623, 629 [1979].) In fact, "the law has adopted a policy of noninterference, with few exceptions, in this mode of dispute resolution.” (Supra.) While "arbitrator^] [are afforded] seemingly unfettered discretion in matters submitted to [them pur *179 suant to] the consent of the parties, it is the established law in this State that an award which is violative of public policy will not be permitted to stand.” (Supra, at 630.) Consequently, "[e]ven where the arbitrator makes a mistake of fact or law, or disregards the plain words of the parties’ agreement, the award is not subject to vacatur 'unless the court concludes that it is totally irrational or violative of a strong public policy’ and thus in excess of the arbitrator’s powers”. (Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146, 155 [1995], quoting Maross Constr. v Central N. Y. Regional Transp. Auth., 66 NY2d 341, 346 [1985].)
New York State courts recognize a long-standing policy against the forfeiture of earned but undistributed wages. (See, Hackett v Milbank, Tweed, Hadley & McCloy, supra, at 149; Mirchel v RMJ Sec. Corp., 205 AD2d 388, 389 [1st Dept 1994]; Weiner v Diebold Group, 173 AD2d 166, 167 [1st Dept 1991].) Indeed in Cohen v Lord, Day & Lord (75 NY2d 95, 96, 101 [1989]), the Court of Appeals, in holding that a "law firm partnership agreement which conditions payment of earned but uncollected partnership revenues upon a withdrawing partner’s obligation to refrain from [competing] with the former law firm restricts the practice of law”, stated "[this] holding * * * is premised on a careful assessment of the true issue and effect of the contested clause — entitlement to earned uncollected fees”.
In light of petitioner’s assertion that the arbitrator’s award is violative of this policy, the critical issue presented is whether there exists any ground on which to vacate the arbitrator’s determination on judicial review. The court concludes that the arbitration award denying petitioner’s claims to those benefits does not violate the public policy against forfeiture of earned wages.
II.
Labor Law § 190 (1) defines the term "wages” to mean "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis.” While earned wages are not subject to forfeiture, a "bonus” is payable at the discretion of the employer, and thus is subject to forfeiture. (Weiner v Diebold Group, supra.) Whether the incentive plans at issue herein were a bonus payable at the discretion of the employer or earned wages was a question for the trier of fact. (Supra, at 167.)
*180 Contrary to petitioner’s position, the Stock Plan and Incentive Compensation Plan at issue unambiguously vested a committee of PaineWebber’s Board of Directors with discretion to administer and select participants for those plans. As noted, the express terms of the Stock Plan provide the Committee with "full and final authority * * * to select Participants, grant Awards, determine the type, number, and other terms and conditions of, and all other matters relating to, Awards.” Similarly, the Incentive Compensation Plan expressly stated that the grants of units under the plan were made to key personnel selected in the "sole discretion” of the Committee. Furthermore, the limited partnership agreement expressly stated that the general partner "may invite any Person to become a Limited Partner” of PW Partners.
It has been held that all "employee’s entitlement to a bonus is governed by the terms of the employer’s bonus plan”. (Hall v United Parcel Serv., 76 NY2d 27, 36 [1990].) Herein, the express terms of the Stock Plan and Incentive Compensation Plan stated that the benefits awarded were subject to an explicit vesting schedule. The "parties to a contract are free to make any bargain they wish and are held to bargains made by them with their eyes open”. (Weiner v Diebold Group, supra, at 167.)
With respect to petitioner’s participation in PW Partners, the limited partnership agreement expressly stated that a limited partner’s interest in the partnership did not vest until five years after the date of the limited partner’s first capital contribution. The limited partnership agreement further provided that if the limited partner was terminated before the vesting of his partnership interest, the limited partner was entitled to recover the lesser of the amount in his capital account, or the sum of his capital contribution. Petitioner was terminated on March 30,1995, approximately four years before the vesting of his interest in PW Partners. Thus, pursuant to the express terms of the limited partnership agreement, petitioner was entitled only to the lesser of the amount in his capital account or the sum of his capital contribution. It is undisputed that petitioner made a total capital contribution of $50,000, and that he accepted a check for that amount following his termination.
The court concludes that the arbitration award, whether or not factually correct, is not violative of the public policy against forfeiture of earned income. (See, Hackett v Milbank, Tweed, Hadley & McCloy, supra, at 150.) Courts are statutorily *181 mandated to "confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511.” (CPLR 7510; see also, Integrated Sales v Maxell Corp., 94 AD2d 221, supra.) As the petitioner has not advanced any other grounds for vacating or modifying the award pursuant to CPLR 7511, the respondent’s cross motion to confirm the arbitration award is granted.
Accordingly, it is ordered that petitioner’s application is denied and the petition dismissed; and it is further ordered that the cross motion is granted and the award rendered on April 10, 1996 is confirmed; and it is further ordered and adjudged that petitioner shall have judgment and recover against respondents in the amount of the arbitration award, plus interest at a rate of 9% as computed by the clerk, and that petitioner shall have execution therefor.