[658 NYS2d 614]

JOEL FELDMAN et al., on Behalf of Themselves and MADEIRA PLAZA ASSOCIATES, Respondents-Appellants, v HARVEY MINARS et al., Defendants, and JAMES HABER et al., Appellants-Respondents.

First Department, June 12, 1997

## APPEARANCES OF COUNSEL

*Leigh R. Lasky* of counsel, New York City (*Philip Fertik* on the brief; *Beigel Lasky Rifkind Fertik Gelber & White*, attorneys), for respondents-appellants.

*Edward M. Spiro* of counsel, New York City (*Ross N. Herman* on the brief; *Morvillo, Abramowitz, Grand, Iason & Silberberg, P. C.*, attorneys), for appellants-respondents.

## OPINION OF THE COURT

NARDELLI, J.

This action was commenced by plaintiffs, limited partners in Madeira Plaza Associates, for, *inter alia*, breach of fiduciary duty by defendant Harvey Minars, the sole general partner of the partnership, in allegedly misleading plaintiffs, causing them to sell their partnership interests at a discount and for conversion of partnership opportunities for his own gain, in which he was aided by defendants U.S. Realty Associates, U.S. Realty Corp. and James Haber. Haber is the president and sole shareholder of U.S. Realty Corp., which is the sole general partner of U.S. Realty Associates, a limited partnership.

Defendants moved to disqualify the law firm of Beigel Schy Lasky Rifkind Goldberg Fertik & Gelber (the Beigel firm) from representing plaintiffs in this action on the ground that such representation breached a settlement agreement entered into in an Illinois action by the Beigel firm and defendant Haber and others. Pursuant to the settlement agreement, dated July 12, 1990, plaintiff investors settled their claims against Haber and others for alleged violations of various Federal and State security and related laws. The agreement also provided: "As an inducement to the settling defendants [including Haber] to enter into this Settlement Agreement, and as a material condition thereof, [the Beigel firm] warrants and represents to the settling defendants that neither such firm nor any of its employees, agents, or representatives will assist or cooperate with any other parties or attorneys in any such action against the settling defendants arising out of, or related in any way to the investments at issue in the actions or any other offerings heretofore or hereafter made by the settling defendants * * * nor shall they encourage any other parties or attorneys to commence such action or proceeding."

In consideration of the investors' agreements, the settling defendants, including Haber, paid the investors the aggregate sum of $50,000.

Thereafter, in a letter dated July 22, 1992, the Beigel firm contacted the limited partners of Madeira, stating:

"We have been asked by certain limited partners to conduct an investigation of [Madeira] to determine whether limited partners may have claims for damages against the organizers and sponsors of the partnership. * * *

"We are, therefore, writing to you at the request of our clients who wish you to consider joining with them in seeking judicial redress for the losses suffered, though we have committed to them that we would proceed regardless of how few or many of their co-limited partners decide to join."

One year after sending that letter, the Beigel firm, on behalf of plaintiffs, commenced this action.

The IAS Court found that the settlement agreement was clear and unambiguous and that the words "assist[ing]" and "cooperat[ing]" had a broad meaning that included representation. It held that an interpretation that would prohibit the Beigel firm from assisting plaintiffs but allow it to represent them would be absurd. However, the court held that the Beigel law firm was properly *not* disqualified from serving as plaintiffs' counsel, although the law firm's representation contravened the settlement agreement entered into by the law firm in an unrelated action, because the settlement agreement violated Code of Professional Responsibility DR 2-108 (B) (22 NYCRR 1200.13 [b]), which prohibits attorneys from entering into an agreement restricting their right to practice law.

There is no question that a strong case can be made for the proposition that such a provision constitutes an impermissible restraint on the law firm's practice of law in violation of the Code of Professional Responsibility DR 2-108 (B). DR 2-108 (B) (22 NYCRR 1200.13 [b]) reads, in full: "In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts the right of a lawyer to practice law."

However, *Cohen v Lord, Day & Lord* (75 NY2d 95), cited by the plaintiffs-respondents, does not support their position. That case dealt with a law firm partnership agreement that conditioned payment of earned but uncollected partnership revenues upon a withdrawing partner's obligation to refrain from the practice of law in competition with the former law

firm, and was found to be in violation of DR 2-108 (A) and thus unenforceable as against public policy. However, the Court of Appeals in that case carefully stated that "[o]ur holding, it must be appreciated, is premised on a careful assessment of the true issue and effect of the contested clause—entitlement to earned uncollected fees during the tenure of the partner as a working member of the firm" (*supra*, at 101), and noted specifically that its "narrow holding" addressed "only the contested clause in the context of this litigation and this professional relationship, and we expressly caution against a categorical interpretation or application" (*supra*, at 102).

In the previous litigation in Illinois, the agreement provided, *inter alia*, that the Beigel law firm would not "assist or cooperate" with other parties or attorneys in other actions against the settling defendants, including Haber.

We agree with the finding of the IAS Court that the act of representation by the Beigel firm of plaintiffs herein violated the language and intent of the settlement agreement. While that language, quoted above, did not expressly prohibit the law firm from representing any clients in actions against the settling defendants, it did prohibit the firm from doing anything to "assist or cooperate" with any other parties or attorneys in other actions, so that the actual representation of other parties would, a fortiori, be barred as well.

Moreover, the last sentence of this section of the agreement binds the law firm to a commitment not to "encourage any other parties or attorneys to commence such action or proceeding". This is a significantly different commitment than assisting or cooperating with other parties or attorneys, or representing other parties. After entering this agreement, the Beigel firm sent a letter to the limited partners of Madeira, which is quoted in pertinent part above. It, in effect, solicited its recipients to take part in the current lawsuit: "We are, therefore, writing to you at the request of our clients who wish you to consider joining with them in seeking judicial redress for the losses suffered".

Even assuming, arguendo, that a settlement agreement that forbids an attorney to represent other clients against the settling defendants in similar litigation is against public policy, as expressed in the Code of Professional Responsibility, an agreement not to *solicit* clients is not likewise against public policy. In fact, until recently, solicitation of clients, even without an agreement, was barred by applicable disciplinary rules. The above letter was clearly a solicitation of plaintiffs

barred by the settlement agreement. Accordingly, for that reason alone, the Beigel firm should have been disqualified from representing plaintiffs in this action.

In any event, the language of DR 2-108 (B) does not bar the settlement agreement entered into in the Illinois action. In Kansas, the version of DR 2-108 (B) is nearly identical to our rule, and the Kansas Court of Appeals invalidated as against public policy a separation agreement where a wife agreed never to retain her current attorney or any member of his firm in the divorce proceeding or any other action against her husband (*Jarvis v Jarvis*, 12 Kan App 2d 799, 800, 758 P2d 244, 246). However, the comment to the Kansas rule adds that the section prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client (*supra*, 12 Kan App 2d, at 801, 758 P2d, at 247). New York does *not* have a similar commentary, and we find persuasive the reasoning of Professor Gillers, who contends that "Rule 5.6 (b) [the Model Rules counterpart of DR 2-108 (B)] is an anachronism, illogical and bad policy" (Gillers, *A Rule Without A Reason, Let the Market, Not the Bar, Regulate Settlements that Restrict Practice*, 79 ABA J 118 [Oct. 1993]). Thus, he states that the best argument for the rule is that it prevents defendants from "buying off" plaintiffs' lawyers. However, he notes:

"This argument fails for two reasons. First, defendants are allowed to try this gambit—they can use the same funds to try to retain the best opposing lawyers.

"Second, and more important, the argument assumes that the plan can work, that enough good lawyers will agree to forgo lucrative work and that the defendant will be willing and able to make it financially worthwhile.

"These untested assumptions are dubious. They ignore the market. If a claim has merit and elimination of one lawyer creates a vacancy, the market will produce a replacement. Undoubtedly, some lawyers will accept a restriction, but surely not enough to deprive worthy claimants of all counsel.

"The prohibition on restrictive covenants was adopted before the era of mass torts. Today, it can impede useful settlements and foster needless litigation. Willing participants should be able to agree as they wish.

"May Rule 5.6 (b) rest in peace." (*Ibid.*; *see also, Howard v Babcock*, 6 Cal 4th 409, 422-423, 863 P2d 150, 158-159.)

Since our Court of Appeals has not dealt with the issue raised herein and, in fact, strictly limited its finding in *Cohen v Lord,*

*Day & Lord* (*supra*) to the facts before it, we would conclude that an agreement by counsel not to represent similar plaintiffs in similar actions against a contracting party is not against the public policy of the State of New York. At the least, failure to enforce a freely entered-into agreement would appear unseemly, and the "clean hands" doctrine would preclude the offending attorneys from using their *own* ethical violations as a basis for avoiding obligations undertaken by them. Even if it is against the public policy of this State, the "violation" can be addressed by the appropriate disciplinary authorities (*see, Shebay v Davis*, 717 SW2d 678, 682 [Tex Ct App]; *Lee v Florida Dept. of Ins.*, 586 S2d 1185, 1188 [Fla Dist Ct App]). Finally, as noted above, the reason for our disqualification of the Beigel firm lies in the fact that it "solicited" plaintiffs in violation of its agreement.

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered on or about August 30, 1995, which denied the motion by defendants James Haber, U.S. Realty Associates and U.S. Realty Corp. to disqualify the law firm of Beigel Schy Lasky Rifkind Goldberg Fertik & Gelber from serving as plaintiffs' counsel in the instant action, should be reversed, on the law and facts, without costs or disbursements, and the motion granted.

ELLERIN, J. P., WALLACH, RUBIN and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered on or about August 30, 1995, reversed, on the law and facts, without costs or disbursements, and defendants' motion to disqualify the law firm representing plaintiffs granted.