<partyblock>

Philippe Selendy, FAITH GAY, DAVID ELSBERG, JENNIFER SELENDY, ANDREW DUNLAP, MARIA GINZBURG, SEAN BALDWIN, CHRISTINE CHUNG, JORDAN GOLDSTEIN, YELENA KONANOVA, Petitioners,

against

Quinn Emanuel Urquhart & Sullivan, LLP, Respondent.

652323/2018

Attorneys for Petitioner: Debra L. Raskin and Anne L. Clark of Vladeck, Raskin & Clark, P.C.

Attorneys for Respondents: Andrew J. Rossman and Richard Werder of Quinn Emanuel Urquhart & Sullivan, LLP.

Saliann Scarpulla, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 23 were read on this motion to/for INJUNCTION/RESTRAINING ORDER

The following e-filed documents, listed by NYSCEF document number (Motion 002) 25, 26, 27, 28, 29, 31, 32 were read on this motion to/for DISMISS

In this attorney partnership dispute, respondent Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") moves, pursuant to CPLR 404(a) and 3211(a), to dismiss the petition of petitioners Philippe Selendy, Faith Gay, David Elsberg, Jennifer Selendy, Andrew Dunlap, Maria Ginzburg, Sean Baldwin, Christine Chung, Jordan Goldstein, and Yelena Konanova [*2](collectively, "Petitioners") to stay arbitration. Petitioners oppose dismissal.

Background

Petitioners are New York attorneys and former partners of Quinn Emanuel, a California limited liability partnership with international law offices. Petitioners were admitted into the partnership pursuant to the Second Amended and Restated Partnership Agreement dated October 15, 2014 ("Partnership Agreement").

In January and February 2018, Petitioners withdrew from Quinn Emanuel's New York office and formed a new law firm, Selendy & Gay PLLC. Section 5.1(a)(iii) of the Partnership Agreement provides that

[i]f a partner voluntarily withdraws from [Quinn Emanuel], and if, at any time within eighteen (18) months after the effective date of such withdrawal, he, or any enterprise which he joins, performs any legal services in any case or other matter venued within 100 miles of any office of [Quinn Emanuel] for any client who was a client of [Quinn Emanuel] prior to the effective date of such withdrawal, and for which he or his new enterprise performed no legal services prior to the date of the withdrawing partner first became an employee or partner of [Quinn Emanuel], then the partner so withdrawing shall pay to [Quinn Emanuel], as a reasonable estimate of the harm caused to [Quinn Emanuel] and the other partners by his withdrawal as a result of the loss of fees which would otherwise have been received from [Quinn Emanuel's] clients taken by him, a sum equal to 10% of the total fees billed by him and/or his new enterprise from that client for services rendered by them, or any of them, during the eighteen (18) month period following the effective date of his withdrawal from the partnership.

In late February 2018, Richard Werder, the managing partner of Quinn Emanuel's New York office, demanded that Petitioners comply with section 5.1(a)(iii)'s payment obligations. Petitioners refused, on the basis that the provision is against New York public policy as an impermissible restraint on the practice of law.

The petition alleges that prior to demanding payment, Quinn Emanuel engaged in serious anticompetitive conduct. Petitioners submit emails from John Quinn, the firm's founding member, in which he sought to impose an antipoaching condition because the "issues to be faced will be resolved a lot
easier if [Petitioners] don't hire any [Quinn Emanuel associates]." Petition, Ex. D (emphasis in original). Petitioners refused and allege that Quinn Emanuel continued attempting to extract a "no poaching" agreement by threatening to enforce section 5.1(a)(iii) as a penalty, despite having never enforced the provision against a departing partner.[FN1]

Unable to amicably resolve their dispute, Quinn Emanuel filed a demand for arbitration to enforce the provision on April 24, 2018. Section 7.6 of the Partnership Agreement ("Arbitration Provision") provides that

[i]n the event of any dispute between or among any partners or between any one or more partners, on the one hand, and the Partnership on the other, with respect to this Partnership Agreement, the conduct of the affairs of the Partnership or any other matter related thereto, whether in contract, tort, equity or otherwise, and whether arising from facts or circumstances first existing before or after the adoption of this arbitration provision by the partners, such dispute shall be resolved exclusively through an arbitration proceeding conducted pursuant to the Commercial Rules of the American Arbitration Association and the supplementary Procedures for Large Complex Cases . . . . The arbitration shall be conducted on a confidential basis in a private office or other private facility in Los Angeles, California and shall be agreed to by the parties (or selected by the arbitrator if the parties cannot agree) . . . . The arbitrator shall have jurisdiction to determine the arbitrability of any dispute . . . . The final award in the arbitration shall be binding on the parties and may be specifically enforced by legal proceedings, including but not limited to entry of a judgment on the award by any court of appropriate jurisdiction . . . . The obligation to arbitrate any such dispute will survive any partner's disassociation from the Partnership.

In addition to the Arbitration Provision, section 7.5 of the Partnership Agreement provides that

[The Partnership] Agreement is to be governed by and construed in accordance with the laws of the State of California applicable to contracts made and to be performed wholly within such State, and without regard to the conflicts of the laws principles thereof. Subject to the [Arbitration Provision], any suit brought hereon, whether in contract, tort, equity or otherwise, shall be brought in the state or federal courts sitting in Los Angeles, California, the parties hereto hereby waiving any claim or defense that such forum is not convenient or proper.

On May 11, 2018, Petitioners filed in this court: (1) a petition to permanently stay and enjoin the arbitration proceeding; and (2) an order to show cause for a temporary stay pending determination of that petition. Petitioners submit, as an exhibit to the petition, a declaration of Hal R. Lieberman ("Lieberman"), a well-respected legal ethics expert in New York, who opined that the payment obligations at issue are unethical under New York law, in addition to the no-poaching agreement Quinn Emanuel attempted to extract from Petitioners. The parties have since stipulated to a temporary stay, and Quinn Emanuel now moves for dismissal of the petition based on the Arbitration Provision or, alternatively, based on section 7.5 of the Partnership Agreement.

Discussion

"When determining whether a particular dispute is arbitrable, a court must determine whether the dispute 'falls within the scope of the arbitration agreement', and whether the dispute 'is one that may be submitted to arbitration without violation of any law or public policy'" Platovsky v City of New York, 49 AD3d 842, 842-43 (2d Dep't 2008) (citations omitted). Here, the Arbitration Provision is broad, unambiguous and requires arbitration of disputes related to the Partnership Agreement, including the arbitrability of any dispute. Petitioners argue, however, that the question of arbitrability in this context is not for the arbitrator in the first instance because it raises issues of public policy.

Petitioners contend that section 5.1(a)(ii) of the Partnership Agreement is a void forfeiture-for-competition provision in violation of rule 5.6 of the New York Rules of Professional Responsibility. That rule provides, in relevant part, that "[a] lawyer shall not participate in offering or making a partnership . . . agreement that restricts the right of a lawyer to practice after termination of the relationship[.]" Rules of Professional Conduct 22 NYCRR 1200, Rule 5.6(a)(1). The rule prohibits restrictions on the practice of law, and courts apply the rule for purposes of assessing the availability of civil remedies for claims such as those Quinn Emanuel raises in the arbitration proceeding.

New York courts, for example, have denied enforcement of anticompetition clauses as violative of public policy. See Cohen v. Lord, Day & Lord, 75 NY2d 95 (1989) (denying the enforcement of a provision which exacted a substantial financial penalty for competing with the former firm, because the provision restricts the right of a former lawyer to practice in violation of rule 5.6); Denburg v. Parker, Chapin, Flattau & Klimpl, 82 NY2d 375 (1993) (same). The issue then is whether the alleged violation of rule 5.6, which implicates New York public policy, should be determined preliminary by a New York court. Quinn Emanuel argues that such public policy concerns do not preempt the Arbitration Provision and cites Hackett v Milbank, Tweed, Hadley & McCloy, 80 NY2d 870 (1992) (hereinafter, "Hackett") as support.

Hackett involved a dispute between a lawyer and his former law firm. The lawyer sought supplemental payments upon his withdrawal, but the law firm refused based on the terms of the partnership agreement. To resolve the dispute, the law firm demanded arbitration pursuant to the partnership agreement. The lawyer objected and filed a petition for a stay, arguing that public policy exempted the dispute from arbitration.

The trial court in Hackett granted the petition for a permanent stay. The Appellate Division, First Department affirmed, agreeing with the trial court that the partnership agreement incorporated a forfeiture-for-competition clause in violation of the lawyer code and therefore, required resolution by a court of law. The Court of Appeals, however, reversed and instead held that the controversy "should be decided in these circumstances by an arbitrator in the first instance." Hackett, 80 NY2d at 871.

In a second proceeding challenging the arbitrator's determination, the Court of Appeals confirmed its holding in Hackett, noting "that petitioner's argument that an arbitration decision denying him benefits would be contrary to public policy was insufficient to preempt the arbitration: the arbitrator's decision, once made, could be subsequently challenged on a motion to vacate or confirm." Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146, 152 (1995) (hereinafter, "Hackett II").

In accordance with Hackett and Hackett II, the public policy issue here, i.e., whether section 5.1(a)(ii) of the Partnership Agreement is prohibitively anticompetitive under New York law, does not overcome the broad Arbitration Provision, which must be given effect as overriding policy. See Hackett II, 86 NY2d at 149 ("There is a second, and arguably stronger, policy concern in this case, however, the public policy favoring arbitration.").  Petitioners' argument to the contrary
is unpersuasive.

As the Court of Appeals noted in Hackett II, "a contested [competition] provision must be assessed within its own particular litigation context[.]" Id. at 156 (citing Cohen, 75 NY2d at 102). The provision in dispute here is neither identical to provisions previously determined as anticompetitive under New York law nor does it outright prohibit the practice of law. See [*3]Denburg v Parker Chapin Flattau & Klimpl, 82 NY2d 375, 385 (1993) ("[U]nlike outright prohibitions on the practice of law, agreements involving financial disincentives are not per se illegal but depend on the particular terms and circumstances."); see also Feldman v Minars, 230 AD2d 356, 360-61 (1st Dep't 1997) ("Since our Court of Appeals has not dealt with the issue raised herein and, in fact, strictly limited its finding in Cohen . . . to the facts before it, we would conclude that an agreement by counsel not to represent similar plaintiffs in similar actions against a contracting party is not against the public policy of the State of New York.").[FN2]

Although Petitioners submit competent proof supporting their argument that section 5.1(a)(ii) of the Partnership Agreement is anticompetitive under New York law, including John Quinn's emails and Lieberman's declaration, it is for the arbitrator in the first instance to consider these submissions when determining whether the provision at issue is an unenforceable forfeiture-for-competition clause. Any further inquiry on my part is precluded by the broad arbitration provision and the strong public policy compelling its enforcement.

Petitioners may also raise before the arbitrator the important issue of whether the Partnership Agreement's choice of law provision, which provides that California law is applicable, should apply to determine the enforceability of section 5.1(a)(iii) against New York attorneys. As Petitioners note, unlike New York courts, California courts are more likely to enforce restrictive covenants in law firm agreements, despite the same prohibition in that state's lawyer code. See, e.g., Howard v Babcock, 6 Cal 4th 409, 425 (1993) ("We hold that an agreement among partners imposing a reasonable cost on departing partners who compete with the law firm in a limited geographical area is not inconsistent with [the lawyer-code] and is not void on its face as against public policy.").

However, it is for the arbitrator to pass upon whether to apply the choice of law provision in the context of resolving the parties' payment dispute where, as here, a broad arbitration provision exists. See Revson v Hack, 239 AD2d 169, 169 (1st Dept 1997) (confirming the arbitration award although the arbitrator did not apply the agreement's choice of law provision because "an arbitrator under a broad arbitration clause [is able] to 'do justice as he sees it, applying his own sense of law', constrained only by strong public policy and rationality of result").

Moreover, resolution of the choice of law issue by an arbitrator would not impermissibly interfere with the New York judiciary's ability to discipline New York attorneys. See Wittels v Sanford, 137 AD3d 657, 658 (1st Dep't 2016) (the arbitrator's determination that a partner in the now dissolved law firm "was entitled to an accounting and distribution of his partnership interest, even if he violated the Rules of Professional Conduct, did not violate public policy by intruding on the court's authority to discipline attorneys for ethical misconduct[.]").  

For the foregoing reasons, I grant Quinn Emanuel's motion to dismiss the petition and direct the parties to proceed with the Arbitration Proceeding.

In accordance with the foregoing, it is

ORDERED that respondent Quinn Emanuel Urquhart & Sullivan, LLP's motion to dismiss the petition is granted, and the petition is denied and dismissed. The Clerk of the Court is directed to enter judgment accordingly.

This constitutes the decision and order of the Court.

DATE April 22, 2019

SALIANN SCARPULLA, J.S.C.

Footnotes

Footnote 1: Interestingly, when I asked counsel for Quinn Emanuel whether the firm had previously enforced the payment provision against a departing partner, he could not provide an answer.

Footnote 2: I also disagree with Petitioners contention that section 5.1(a)(iii) is similar to the unenforceable provision in Matter of Silverberg, 75 AD2d 817 (2d Dep't 1980). Compare Section 5.1(a)(iii) of the Partnership Agreement (providing that for 18 months after the partner's withdrawal, the partner pay 10% of fees earned from Quinn Emanuel's former clients), with Silverberg, 75 AD2d at 819 (granting a stay of arbitration where the provision provided that for 18 months after terminating the partnership, the partner pay 80% of fees earned from the other partner's clients).  

<form method="LINK" action="../../slipidx/com_div_idxtable.shtml">

<input type="submit" value="Return to Decision List">

</form>

</partyblock>