JEEREDDI A. PRASAD, M.D., INC., RETIREMENT PLAN TRUST PROF-IT SHARING PLAN and Jeereddi A. Prasad, M.D., Petitioners,

v.

INVESTORS ASSOCIATES, INCORPO-RATED, Herman Epstein, and Lawrence Joseph Penna, Respondents.

No. CIV. A. 99–2512 (JAG).

United States District Court, D. New Jersey.

Feb. 10, 2000.

James David Ferrucci, Arthur M. Nalbandian, Wolff & Samson, P.A., Roseland, NJ, Jeffrey L. Squires, Simon, Turnbull & Martin, Chartered, Washington, DC, for Petitioners.

Chad N. Cagan, Martin P. Schrama, Sonnenblick, Parker & Selvers, P.C., Freehold, NJ, for Respondents.

**OPINION**

GREENAWAY, District Judge.

This matter comes before the Court on the motion of Jeeredi A. Prasad, M.D., Inc., Retirement Plan Trust Profit Sharing Plan ("Prasad Retirement Trust") and Jeeredi A. Prasad, M.D. (collectively, "Petitioners") to confirm and enter judgment upon an arbitration award issued in their favor on November 24, 1998. Respondents Investors Associates, Incorporated ("IAI"), Herman Epstein, and Lawrence Joseph Penna have filed a cross-motion for an Order vacating the arbitration award. For the following reasons, Petitioners' mo-

tion is granted and Respondents' motion is denied.

## FACTS

In or about 1996, Dr. Prasad, a California resident, opened several securities accounts with IAI, a securities brokerage firm, incorporated in New Jersey, with its principal place of business here. Dr. Prasad was a customer of IAI in both his individual capacity and as trustee of the Prasad Retirement Trust. During the relevant time, Respondent Epstein was President of IAI and Respondent Penna was the firm's Executive Vice–President. Both Epstein and Penna reside in New Jersey.

In opening the accounts, Dr. Prasad executed a "Client's Agreement" (the "agreement"). The agreement contained a choice-of-law clause, which provided for the contract to be governed by New York law. The agreement further provided that any controversy arising out of, or relating to, Petitioners' accounts would be submitted to binding arbitration before one of a number of self-regulatory organizations in the securities field. Under the agreement, any court of competent jurisdiction may enter judgment upon any award rendered by the arbitrators. *See* Affidavit of Lawrence R. Gelber, dated August 12, 1999 ("Gelber Aff."), Ex. A.

On or about November 26, 1997, Petitioners filed a demand for arbitration with the National Association of Securities Dealers ("NASD") in Los Angeles, alleging that Respondents had engaged in fraudulent and other wrongful activities in connection with the sale of securities to Petitioners.[1] The parties filed a Uniform Submission Agreement in which they agreed that the arbitration would be conducted under the Constitution, By–Laws, Rules, Regulations and/or Code of Arbitration Procedure of the NASD. *See* Affidavit

of Jeffrey L. Squires, dated September 20, 1999 ("Squires Aff."), Ex. A.

The panel of arbitrators, Herbert Leslie Greenberg, Jeffrey E. Skogsbergh, and Susan Vernon Wood, held the arbitration hearing from August 11 through August 13, 1998. At that time, Wood served as Senior Corporations Counsel in the Securities Regulation Division of the California Department of Corporations. She had disclosed this fact in her Arbitration Disclosure provided to the parties in March 1998. *See* Squires Aff., Ex. D.[2] The parties did not lodge any objections to the panel members upon receiving the disclosures. Greenberg served as the panel's Chairman.

At the commencement of the hearing, Lawrence Gelber, Respondents' arbitration counsel, objected to both Greenberg's and Wood's presence on the arbitration panel. First, Gelber argued that Greenberg was biased. Earlier in the proceedings, Greenberg had sanctioned Respondents as a result of a discovery dispute. Gelber asserted that as a result of this ruling, Greenberg could not be impartial and was hostile to Respondents.

Gelber then expressed concern that Wood's presence on the panel would create the appearance of bias or partiality. In 1997, the California Department of Corporations had commenced an investigation of Respondents, which culminated in a consent decree. As a result, Respondents agreed to a revocation of their licenses to deal securities in that state. Gelber acknowledged that Wood's disclosure of her employer had "escaped [his] notice" and that he had waived any peremptory challenge by failing to challenge Wood earlier. *See* Squires Aff., Ex. I at 7, 10. He urged Wood to recuse herself because of the appearance of a conflict, though he stated

---

**1.** In the demand for arbitration, Prasad also named Troy V. Wren, the broker responsible for Prasad's accounts, as a respondent. Petitioners and Wren reached an agreement prior to the arbitration and Wren testified for Petitioners in the proceeding.

**2.** Under the NASD Code of Arbitration Procedure, each of the arbitrators was required to file a disclosure, which was distributed to the parties. *See* NASD Code of Arb. Proc. §§ 10310, 10312.

that he believed "she has no actual conflict." *See* Squires Aff., Ex. I at 11.

After an off-the-record discussion among the panel members, both Greenberg and Wood declined to withdraw. *See* Squires Aff., Ex. I at 14.

On November 24, 1998, the arbitration panel entered an award in Petitioners' favor, awarding Dr. Prasad $84,108.00 in compensatory damages, and awarding the Prasad Retirement Trust $271,244.00 in compensatory damages. Each Respondent is jointly and severally liable for the entire award.[3] The panel denied Petitioners' request for punitive damages and required each side to bear its own costs and fees. *See* Squires Aff., Ex. B.

In the three months that followed, Respondents did not seek to vacate the award. Petitioners timely commenced the present action to confirm the award on June 1, 1999. *See* 9 U.S.C. § 9.[4] On August 13, 1999, nearly nine months after the award was issued and in response to Petitioners' application, Respondents filed the instant motion to vacate.

## DISCUSSION

### I. *Timeliness*

■ Petitioners argue that Respondents' request to vacate the arbitration award is untimely. They contend that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1994) (the "FAA" or the "Act"), governs this proceeding.[5] The FAA applies to arbitrations involving interstate commerce—such as the securities transactions involved here. *See* 9 U.S.C. § 1. The FAA imposes a three-month limitations period for challenging arbitration awards. *See* 9 U.S.C. § 12.

The arbitration panel issued the award on November 24, 1998. Respondents' motion to vacate was filed on August 13, 1999—well beyond the FAA's three-month time period. If Respondents' motion is untimely, this Court may not consider Respondents' challenges to the validity of the award. Absent a statutory basis for vacating the award, the award is considered proper and the Court must grant petitioners' motion and confirm the arbitration award. *See* 9 U.S.C. § 9 (stating that upon proper application for confirmation order, the court must grant the order unless the award is vacated, modified, or corrected, in accordance with the FAA); *see also Lander Co. v. MMP Invs., Inc.,* 107 F.3d 476, 478 (7th Cir.1997) ("Under the Act, if you fail to move to vacate an arbitration award you forfeit the right to oppose confirmation (enforcement) of the award if sought later by the other party."); *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 177 (2d Cir.1984) ("When the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding.").

■ The Act does not permit the assertion of challenges to an arbitration award in opposition to a motion to confirm the award after the three-month limitations

---

**3.** The arbitration award states that each Respondent is jointly and severally liable for the award, but does not state the legal basis for joint and several liability. Under the agreement, the "arbitrators' award is not required to include factual findings or legal reasoning." Gelber Aff., Ex. A, ¶ 13.

**4.** Section 9 of Title 9 of the United States Code provides, in pertinent part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

**5.** The FAA does not provide an independent basis for federal jurisdiction. *See Paine-Webber, Inc. v. Faragalli,* 61 F.3d 1063, 1066 (3d Cir.1995). Jurisdiction exists in this case based on diversity of citizenship and an amount in controversy in excess of $75,000, pursuant to 28 U.S.C. § 1332.

**368**

period has expired. *See Service Employees Int'l Union, Local No. 36 v. Office Ctr. Servs., Inc.,* 670 F.2d 404, 409 (3d Cir. 1982) (noting that federal law forbids assertion of defenses that could have been raised in motion to vacate in confirmation proceedings occurring more than three months after award's issuance); *see also Florasynth,* 750 F.2d at 175 (same); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.,* 863 F.2d 851, 854 (11th Cir.1989) (same). Thus, if the FAA applies, Respondents' challenges are untimely and Petitioners' motion must be granted.

Respondents assert, however, that by designating New York in the agreement's choice-of-law clause, the parties agreed that the time period for challenging the arbitration award is governed by New York law, not the FAA. Similar to the FAA, New York law limits motions to vacate arbitration awards to a 90–day period following the entry of the award. *See* N.Y. C.P.L.R. § 7511(a). But, in contrast to the FAA, New York's courts have interpreted the rule to permit a challenge to an arbitration award to be raised in opposition to a motion to confirm the award— even if no challenge was raised in the first 90 days. *See Brentnall v. Nationwide Mut. Ins. Co.,* 194 A.D.2d 537, 598 N.Y.S.2d 315, 316 (1993). Consequently, Respondents argue, under New York law, their challenge to the validity of the arbitration award is timely since it was raised in opposition to Petitioners' motion to confirm.

The FAA was enacted to foster the public policy favoring arbitration and to give effect to parties' contractual agreements to arbitrate. In *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the Supreme Court of the United States considered the policies behind the Act and held that it did not preempt state arbitration rules. There, the parties' arbitration agreement's choice-of-law clause designated California as the governing law, which the lower courts had construed to incorporate California's rules of arbitration. *See id.* at 472, 109 S.Ct. 1248. California permits an arbitration to be stayed pending resolution of related litigation. *See id.* at 471, 109 S.Ct. 1248. The Supreme Court held that, notwithstanding the FAA, the agreement to abide by those state rules was not inconsistent with federal policy.

There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration— rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction [in favor of arbitration] nor does it offend any other policy embodied in the FAA.

*Id.* at 476, 109 S.Ct. 1248. If, however, the state rules conflicted with Congressional objectives—by, for example, mandating that certain disputes be resolved in a judicial forum—the FAA would preempt them. *See id.* at 477, 109 S.Ct. 1248.

An agreement to arbitrate could thus adopt state arbitration rules and state confirmation procedure. For example, in *Hackett v. Milbank, Tweed, Hadley & McCloy,* 86 N.Y.2d 146, 154, 630 N.Y.S.2d 274, 654 N.E.2d 95 (1995), cited by Respondents, the partnership agreement at issue expressly provided that New York law would govern the arbitration and that the only grounds for vacating any award were those set forth in two New York statutes. The Court of Appeals looked to the New York arbitration rules in light of "[s]uch an explicit and unambiguous choice of law." *Id.*

The agreement here was not similarly explicit. It provides that New York law governs the parties' rights under the contract, and that the arbitration shall be governed by NASD rules. The NASD Code of Arbitration Procedure, however, does not include a limitations period for objections. Thus, the Court must deter-

mine whether under the agreement—and federal policy—the FAA or New York law applies to this motion to vacate.[6]

Although Respondents argue that *Volt* supports the application of New York law to this issue, no contractual language indicates that the parties embraced New York's rules for the arbitration confirmation process.[7] Indeed, the parties expressly designated for arbitration rules other than those of New York to govern. At the same time, however, the rules designated—those of the NASD—include no provisions concerning motions to confirm, vacate, or modify. The contract is thus silent on the procedure for obtaining a judgment on an arbitration award, beyond noting that the judgment may be obtained in a court of competent jurisdiction. In light of this silence, and federal policy favoring prompt resolution of disputes, finality of arbitration, and limited judicial intervention into arbitration, this Court finds that the FAA governs this federal court proceeding. Accordingly, Respondents' motion to vacate the arbitration award is time-barred.

The reasoning of the Supreme Court of the United States in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), is particularly instructive in making this determination. As in this action, in *Mastrobuono,* the agreement contained a general choice-of-law clause, designating New York law, and a broad arbitration provision, which called for arbitration before the NASD under that organization's rules and procedures. *See id.* at 58–59, 115 S.Ct. 1212. Although New York courts had adopted a rule forbidding arbitrators from imposing punitive damages, since the con-

tract was silent as to the parties' intention to exclude punitive damages, the Court declined to read the contract's choice-of-law clause to incorporate this punitive damages prohibition. *See id.* at 59–62, 115 S.Ct. 1212. Furthermore, the Court noted that "[a]t most, the choice-of-law clause introduces an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards," and affirmed the principle that " 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' " *Id.* at 62, 115 S.Ct. 1212 (quoting *Volt,* 489 U.S. at 469, 109 S.Ct. 1248).

As in *Mastrobuono,* by making no reference to New York's rules governing confirmation proceedings, the general choice-of-law clause here at most incorporates an ambiguity as to what body of law governs this confirmation proceeding. While the New York rule at issue in this case does not expressly defeat arbitration, it unquestionably undermines the finality of arbitration awards and expands the reach of judicial review of such awards. In *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998), though New York law governed the statute of limitations for challenges to the LMRA award, the Second Circuit refused to permit a challenge to the validity of the underlying arbitration in opposition to a motion to confirm, which was filed 91 days after the award was issued. Acknowledging that New York courts permit such challenges, the *Associated Musicians* court found that "[t]he New York courts have placed a gloss on the limitations statute that is inimical to

---

**6.** The parties do not dispute that in motions to confirm labor arbitration awards under the Labor Management Relations Act ("LMRA"), the court borrows the applicable state limitations period. *See, e.g., Service Employees,* 670 F.2d at 408–09; *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel,* 145 F.3d 85, 88 (2d Cir.1998). As the award in this case was not rendered under the LMRA, that general rule does not apply and the question for the Court remains

whether the parties agreed that New York's confirmation rules would apply.

**7.** In *Volt,* there was an express state court finding that the contractual choice-of-law language incorporated California's arbitration rules in addition to its substantive law. *See Volt,* 489 U.S. at 475, 109 S.Ct. 1248. The Supreme Court did not disturb that finding. *See Mastrobuono,* 514 U.S. at 60 n. 4, 115 S.Ct. 1212.

the important federal interests of promoting resolution of labor conflicts quickly and effectively through arbitration." 145 F.3d at 89.

This Court agrees that permitting challenges to arbitration awards to be asserted as defenses to a motion to confirm, filed after the time period for filing motions to vacate has run, contravenes federal policy favoring quick resolution of arbitrations and the enforcement of arbitration awards. Moreover, it expands the opportunity for judicial review of arbitration awards, which Congress expressly sought to limit through the FAA. These Congressional objectives are served by refusing to permit the assertion of challenges beyond the statutory time limit. Thus, the resolution of any contractual ambiguity in favor of arbitration requires application of the FAA. As in *Mastrobuono,* in the absence of contractual intent to the contrary, the FAA trumps the New York rule. *See Mastrobuono,* 514 U.S. at 59, 115 S.Ct. 1212; *see also Wolsey, Ltd. v. Foodmaker, Inc.,* 144 F.3d 1205 (9th Cir.1998) (general choice-of-law clause did not incorporate California rule permitting stay of arbitration pending resolution of related litigation); *Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926 (6th Cir.1998) (general choice-of-law clause did not incorporate Ohio's arbitration law requirement that the question of fraudulent inducement be judicially determined); *National Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.,* 88 F.3d 129 (2d Cir.1996) (general choice-of-law clause did not incorporate New York's requirement that a court determine preclusive effect of prior arbitration).[8]

An additional factor propels this Court toward application of the FAA. *Mastrobuono* reminded courts and practitioners of "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono,* 514 U.S. at 62, 115 S.Ct. 1212. The contract at issue here was Respondents' standard client agreement. Respondents should not be permitted to harness any ambiguity contained in that document to their benefit and to Petitioners' detriment.

Respondents sat quietly following the award's issuance and did not act until Petitioners moved to confirm the award. Federal law—and federal policy—do not permit them to challenge the award after such delay. Absent an express agreement that New York's law governing confirmation of arbitration awards would control in this case, this Court will not infer that the parties had intended its application. This proceeding to confirm the arbitration award is thus governed by the FAA, which prohibits Respondents from challenging the arbitration award more than three months after its issuance. Accordingly, respondents' challenges are time-barred.[9]

---

**8.** In *Ekstrom v. Value Health, Inc.,* 68 F.3d 1391, 1396 (D.C.Cir.1995), the court construed a general choice-of-law clause to incorporate Connecticut's thirty-day limitation on challenges to arbitration awards and held that the shorter state limitations period applied rather than the FAA's longer period. As an initial matter, the state limitations period in *Ekstrom* enhanced the speed and finality of the arbitration, thus furthering—not conflicting with—federal policy. Moreover, although decided over six months earlier, the Supreme Court's *Mastrobuono* decision is not cited in *Ekstrom.* Finally, insofar as this Court's construction of the agreement's choice-of-law clause conflicts with *Ekstrom,* this Court declines to follow the D.C. Circuit, and will follow the analyses set forth by the Supreme Court of the United States and the several circuits cited above. *See also International Techs. Integration, Inc. v. Palestine Liberation Org.,* 66 F.Supp.2d 3, 9 n. 5 (D.D.C.1999) (questioning *Ekstrom* 's continued vitality).

**9.** Even if Respondents' challenges had been timely raised, they would fail on the merits. This Court has extremely limited authority to overturn arbitration awards. *See United Transp. Union Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376, 379–80 (3d Cir.1995). Respondents' argument that Arbitrator Wood was biased fails to satisfy the standard necessary for a court to overturn an arbitration award. Although the mere "appearance" of bias is grounds for an arbitrator's removal during the arbitration proceeding, it is an insufficient basis for this Court to upset the panel's determination. Instead, Wood's ap-

Absent any valid challenge to the arbitration award, this Court must grant Petitioner's motion and confirm the award.[10] Judgment will be entered on the award in the amount of $84,108.00 in favor of Dr. Prasad and against all three Respondents, jointly and severally, and in the amount of $271.244.00 in favor of the Prasad Retirement Trust and against all three Respondents, jointly and severally.[11]

## CONCLUSION

For the foregoing reasons, Respondents' motion to vacate the arbitration award is denied and Petitioner's motion to confirm and for entry of judgment upon the award is granted and Petitioners' requests for attorneys' fees and payment of discovery sanctions are denied.

## ORDER

This matter having come before the Court on the motion of Petitioners Jeereddi A. Prasad, M.D., Inc., Retirement Plan Trust Profit Sharing Plan and Jeereddi A. Prasad, M.D., for entry of judgment and the cross-motion of Respondents' Investors Associates, Incorporated, Herman Epstein, and Lawrence Joseph Penna to vacate the arbitration award; and the Court having considered the parties' submissions and oral argument; and good cause appearing,

IT IS on this 9th day of February, 2000,

ORDERED that Respondents' motion is untimely, and therefore denied;

IT IS FURTHER ORDERED that Petitioners' motion to confirm the award is granted and the arbitration award is hereby confirmed;

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment on the arbitration award issued in favor of Petitioners on November 24, 1998, in the amount of $84,108.00 in favor of Dr. Prasad and against Respondents, jointly and severally, and in the amount of $271,244.00 in favor of the Prasad Retirement Trust and against Respondents, jointly and severally;

IT IS FURTHER ORDERED that interest on the aforementioned amounts accrue from November 24, 1998, until those amounts are paid in full;

IT IS FURTHER ORDERED that Petitioners' requests for attorneys' fees and payment of $500 for discovery sanctions awarded by the arbitration are denied; and

parent conflict—if found to exist—must rise to the level of "evident partiality," which is demonstrated through proof of circumstances "powerfully suggestive of bias." *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n. 30 (3d Cir.1994), *aff'd*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citation omitted); *see also* 9 U.S.C. § 10(a)(2). Respondents' submissions, replete with argument and speculation concerning Wood's consideration of the consent decree and devoid of record evidence, fall far short of this standard. Respondents' contention that the arbitrators ruled against Respondents Epstein and Penna in "manifest disregard" of the law is even less meritorious. Respondents put forth no record evidence to demonstrate that the arbitrators knew of the correct legal standard and refused to apply it or ignored it and that "the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1286, 143 L.Ed.2d 378 (1999).

10.   Petitioners have made no showing that Respondents' motion to vacate the award was brought in bad faith. Accordingly, Petitioners' request for attorneys' fees is denied. Likewise, this Court denies Petitioners' request for an Order requiring Respondents to pay Petitioners $500 in discovery sanctions awarded by the arbitration panel during the arbitration proceedings. The award before the Court makes no mention of such sanctions and Petitioners have offered no basis for the Court to order payment of that sanction.

11.   Petitioners are entitled to interest on the award, accruing from November 24, 1998, the date on which the award was issued. *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir.1986). The rate of postjudgment interest is a matter of federal law and will be calculated in accordance with 28 U.S.C. § 1961. As the parties have failed to address the issue of what body of law will determine the interest for pre-judgment period, the Court does not have adequate information before it to make that determination.

IT IS FURTHER ORDERED that a copy of this Order and the accompanying Opinion be served on all parties within seven (7) days of the date of this Order.