COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

LOREN MITCHELL
MAGISTRATE IN CHANCERY

June 26, 2026

Daniel C. Kerrick, Esquire
Hogan McDaniel
1311 Delaware Avenue
Wilmington, DE 19806

Antranig N. Garibian, Esquire
Garibian Law Offices, P.C.
1523 Concord Pike, Suite 400
Wilmington, DE 19803

RE:  *Berkley Research Group, LLC v. Southern Advanced Materials, LLC*,
C.A. No. 2024-1104-LM

Dear Counsel,

This letter decision concerns a dispute arising from Plaintiff Berkeley Research Group, LLC's effort to confirm an arbitration award entered against the Defendant Southern Advanced Materials, LLC.[1] A dispute arose between Plaintiff and Defendant, and under their Contract, the parties participated in an arbitration administered by the Judicial Arbitration and Mediation Services, Inc.[2] On August 2, 2022, the arbitrator issued a final award in BRG's favor.[3] BRG filed this action more than two years later.[4] Southern Advanced Materials moved to dismiss, arguing

---

[1] Docket Item ("D.I.") 1.

[2] D.I. 14 at 2.

[3] D.I. 10 at 3, 5.

[4] D.I. 1.

that BRG's petition is barred by the applicable statute of limitations.[5] BRG opposed the motion and contends that its petition was timely.[6] For the reasons that follow, the Motion to Dismiss is GRANTED and the Amended Complaint is dismissed with prejudice.

## I. BACKGROUND

### A. The Engagement Agreement and Arbitration

Plaintiff Berkeley Research Group, LLC ("BRG") is a Delaware corporation and consulting firm.[7] Defendant Southern Advanced Materials, LLC ("SAM") retained BRG under an engagement agreement dated April 4, 2019 ("Engagement Agreement").[8] The Engagement Agreement provided that disputes arising out of the parties' relationship would be resolved through binding arbitration administered by the Judicial Arbitration and Mediation Services ("JAMS").[9]

---

[5] D.I. 14.

[6] D.I. 13.

[7] D.I. 10 at 1.

[8] *Id*. at 4.

[9] D.I. 14 at 2.

The arbitration provision states that the Engagement Agreement "shall be interpreted by the laws of the state of Delaware."[10] It also provides that any dispute arising out of or relating to the agreement shall be resolved by the "final and binding arbitration administered by Judicial Arbitration & Mediation Services, Inc. (JAMS)" and that "judgment upon any award rendered by the arbitrator may be entered by any State or Federal Court having jurisdiction thereof."[11] According to the Engagement Agreement, the arbitration was required to take place in Philadelphia, Pennsylvania.[12] The parties' dispute ultimately proceeded to arbitration before JAMS. On February 23, 2022, the arbitrator issued an interim award in favor of BRG.[13] On August 2, 2022, the arbitrator issued a final award in favor of BRG in the amount of $433,815.34.[14]

## B. The Tennessee Confirmation Proceedings

On October 17, 2022, about two months after the final award was issued, BRG filed a petition in the Shelby County Chancery Court for the Thirtieth Judicial

---

[10] D.I. 16, Ex. A at 4.

[11] *Id.*

[12] *Id.*

[13] D.I. 16 at 7.

[14] *Id.*

District in Memphis, Tennessee, seeking confirmation of the arbitration award.[15]

SAM moved to dismiss the Tennessee action, arguing that the Tennessee court lacked personal jurisdiction and that Tennessee was not a proper forum for confirmation of the award.[16] BRG opposed the motion and maintained that Tennessee courts possessed jurisdiction to confirm the award.[17]

On April 21, 2023, the Tennessee trial court denied SAM's motion to dismiss, confirmed the arbitration award, and entered judgment in BRG's favor.[18] SAM appealed.[19] On August 9, 2024, the Tennessee Court of Appeals reversed the trial court's judgment and remanded the matter for dismissal.[20] The Tennessee Court of Appeals concluded that although the Tennessee court had subject matter jurisdiction, it lacked personal jurisdiction over SAM.[21] BRG appealed to the Tennessee

---

[15] D.I. 16 at 8.

[16] *Id*. at 2.

[17] *Id*.

[18] *Id*. at 10.

[19] *Id. at Ex.* L at 2.

[20] *Id*. at 10–11.

[21] *Id*.

Supreme Court.[22]   The Tennessee Supreme Court concluded that Tennessee courts lack subject matter jurisdiction to confirm an arbitration award when the parties agreed arbitration would occur in another state.[23]

## C.   Procedural History

While the Tennessee litigation was pending,  BRG commenced this action by filing the Complaint in this Court on October 29, 2024 seeking to confirm the arbitration award.[24]   By that point, more than two years had elapsed since the arbitrator issued the final award on August 2, 2022.[25]   The original complaint sought confirmation of the arbitration award under Delaware law.[26]   SAM moved to dismiss, arguing that the action was untimely because it had not been filed within one year of the arbitration award.[27]

---

[22]  *Id*. at 11.

[23]  D.I. 20 at 1–2.

[24]  D.I. 1.

[25]  D.I. 14 at 4.

[26]  *See generally* D.I. 1.

[27]  *See generally* D.I. 4.

On February 18, 2025, BRG filed an amended complaint.[28]  The amended complaint alleges that the Federal Arbitration Act ("FAA") governs the parties' arbitration agreement and seeks confirmation of the August 2, 2022, award under the FAA.[29]  SAM again moved to dismiss.[30]  SAM contends that the FAA imposes a mandatory one-year period for seeking confirmation of an arbitration award and that BRG's petition, filed more than two years after the award was issued, is untimely.[31]  BRG responded that the FAA governs but argued that the one-year period is permissive rather than mandatory.[32]  Alternatively, BRG contends that its claim survives under various tolling doctrines based on its timely pursuit of confirmation proceedings in Tennessee.[33]

---

[28]  D.I. 10.

[29]  D.I. 10 at 1–3.

[30]  D.I. 14.

[31]  *Id.* at 1.

[32]  D.I. 16 at 16–17.

[33]  *Id.*

## II.     ANALYSIS

### A.     Standard of Review

When considering a motion to dismiss under Court of Chancery Rule 12(b)(6), "we (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[34]  Here, the relevant dates are undisputed.  The Amended Complaint alleges that the arbitrator issued the final award on August 2, 2022, and that BRG commenced this Delaware action on October 29, 2024.  Whether BRG's petition is timely presents a legal question suitable for resolution at the pleadings stage.

### B.     The FAA Governs This Proceeding

The threshold question is whether BRG's petition is governed by the Delaware Uniform Arbitration Act ("DUAA") or the Federal Arbitration Act ("FAA").  The answer is supplied by 10 Del. C. § 5702 (2025).  The applicable section states:

---

[34]  *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

§ 5702. Jurisdiction; applications; venue; statutes of limitations: (a) Jurisdiction of the Court; applications to the Court. — The term "Court" means the Court of Chancery of this State, except where otherwise specifically provided. The making of an agreement described in § 5701 of this title specifically referencing the Delaware Uniform Arbitration Act [§ 5701 et seq. of this title] and the parties' desire to have it apply to their agreement confers jurisdiction on the Court to enforce the agreement under this chapter and to enter judgment on an award thereunder, except as provided in § 5718 of this title. Action shall be commenced by an initial complaint and shall be heard in the manner and upon the notice provided by law or rule of court on any civil action. Notice of an initial complaint shall be served in the manner provided by law for the service of summons in an action.

Thus, Section 5702(a) provides that the DUAA applies *only* where the parties' arbitration agreement specifically references the statute and expresses the parties' desire that it govern their agreement. Conversely, Section 5702(c) directs that, absent such a reference, applications to enforce an arbitration award "shall be decided by the Court of Chancery in conformity with the Federal Arbitration Act."[35] Delaware courts have consistently applied the FAA where an arbitration agreement contains no specific reference to the DUAA. The Engagement Agreement does not reference the DUAA.[36] Instead, it provides that the Engagement Agreement requires disputes to be resolved through JAMS arbitration and permits judgment on an

---

[35] 10 Del. C. § 5702(c) (2025).

[36] *See generally* D.I. 16, Ex. A.

arbitration award to be entered in any state or federal court having jurisdiction.[37]

Moreover, the Engagement Agreement's general Delaware choice-of-law provision is insufficient to trigger application of the DUAA.

The parties' incorporation of the JAMS Rules reinforces this conclusion. JAMS Rule 25 provides:

> Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, et seq., or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.[38]

By agreeing to arbitrate under the JAMS Rules, the parties adopted a framework that expressly contemplates enforcement under the FAA. Additionally, because the Engagement Agreement does not specifically reference the DUAA and because the parties agreed to arbitrate under rules that expressly invoke the FAA, the Court concludes that the FAA governs BRG's petition.

### C. The FAA's One-Year Confirmation Period Is Mandatory

Having determined that the FAA governs, the Court next considers whether BRG timely sought confirmation of the award. Section 9 reads as follows:

---

[37] D.I. 16, Ex. A at 4.

[38] JAMS Comprehensive Arbitration Rules & Procedures r. 25 (JAMS 2021).

§9. *Award of arbitrators; confirmation; jurisdiction; procedure*

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

Section 9 of the FAA specifically provides that a party may apply for an order confirming an arbitration award "at any time within one year after the award is made."[39]  BRG argues that this language is permissive rather than mandatory and therefore does not bar a petition filed outside the one-year period.[40]  The Court rejects BRG's interpretation.  In *George v. Rushmore Serv. Ctr., LLC,* the Third

---

[39]  9 U.S.C. § 9 (2024).

[40]  D.I. 16 at 4.

Circuit's treatment of the one-year period as a hard deadline is instructive here.[41] As the court held there, a party loses the ability to confirm after one year passes.[42] Although BRG argues that *George* is dicta, the conclusion is a direct application of Section 9 of the FAA and not merely a passing observation like BRG asserts. The FAA reflects a strong federal policy favoring arbitration. But this policy does not permit courts to disregard procedural limitations established by Congress.[43]

The confirmation process created by Section 9 is a statutory remedy. In context, the relevant dates here are not disputed. The final arbitration award was issued on August 2, 2022.[44] BRG did not file this action until October 29, 2024, more than two years later.[45] Even measuring from the date of the award most

---

[41]  114 F.4th 226 (3d Cir. 2024).

[42]  *George*, 114 F.4th at 233 n.9.

[43]  *Jeereddi A. Prasad, M.D., Inc. Ret. Plan Tr. Profit Sharing Plan v. Invs. Assocs., Inc.*, 82 F. Supp. 2d 365, 370 (D.N.J. 2000) ("This Court agrees that permitting challenges to arbitration awards to be asserted as defenses to a motion to confirm, filed after the time period for filing motions to vacate has run, contravenes federal policy favoring quick resolution of arbitrations and the enforcement of arbitration awards. Moreover, it expands the opportunity for judicial review of arbitration awards, which Congress expressly sought to limit through the FAA. These Congressional objectives are served by refusing to permit the assertion of challenges beyond the statutory time limit. Thus, the resolution of any contractual ambiguity in favor of arbitration requires application of the FAA.").

[44]  D.I. 16 at 7.

[45]  D.I. 1.

favorably to BRG, the petition was filed well outside the one-year period prescribed by Section 9. Unless a tolling doctrine applies, BRG's petition is untimely.

### D. BRG Has Not Demonstrated That Any Tolling Doctrine Preserves Its Claim

BRG argues that its pursuit of confirmation proceedings in Tennessee preserves its Delaware action through cross-jurisdictional tolling, equitable tolling, and the savings statute.[46] Delaware has several doctrines that can toll a statute of limitations, however none of them apply here.

### 1. Cross-Jurisdictional Tolling Does Not Apply

BRG principally relies on Delaware decisions recognizing cross-jurisdictional tolling.[47] That reliance is misplaced. The Delaware Supreme Court has recognized cross-jurisdictional tolling in the class action context.[48] Class action tolling protects absent class members from being forced to file duplicative lawsuits while a putative

---

[46] D.I. 16 at 28–31.

[47] D.I. 16 at 28–31.

[48] *Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 393 (Del. 2013) ("Accepting the rationale of the United States Supreme Court on class action tolling, we extend the class action tolling exception to cross-jurisdictional class actions and hold that class action members' individual claims are tolled while a putative class action on their behalf is pending.")

class action remains pending.[49]   The doctrine promotes judicial economy and prevents the proliferation of protective filings.

Those concerns are not present here.  This case involves a single arbitration award and a single prevailing party.  BRG was never an absent class member whose rights depended on the actions of another litigant.  Extending cross-jurisdictional tolling to arbitration-confirmation proceedings would significantly undermine the one-year limitation period established by Congress.  Under BRG's theory, a prevailing party could file a confirmation proceeding in one jurisdiction, litigate there for years, and then initiate a new confirmation proceeding elsewhere after the statutory deadline expired.  Such a rule would effectively permit a party to circumvent the FAA's one-year limitation period whenever it first chose an unsuccessful forum.

Nothing in Delaware law supports such a policy expansion.  BRG cites no Delaware decision applying cross-jurisdictional tolling to an arbitration-

---

[49]  *Id.* at 395 ("Allowing cross-jurisdictional tolling recognizes and gives effect to the proposition that the policy considerations underlying our statute of limitations are met by the filing of a class action.  Cross-jurisdictional tolling also discourages duplicative litigation of cases within the jurisdiction of our courts.  If members of a putative class cannot rely on the class action tolling exception to toll the statute of limitations, they will be forced to file "placeholder" lawsuits to preserve their claims.  This would result in wasteful and duplicative litigation.")

confirmation proceeding, and the Court declines to extend the doctrine here. The policies supporting class action tolling do not justify disregarding the statutory deadline governing confirmation of arbitration awards.[50] Accordingly, BRG's Tennessee litigation does not toll the FAA's one-year limitations period.

## 2. The Savings Statute Does Not Apply

10 Del. C. § 8118(a), the Savings Statute, provides a one-year window to refile an action that was timely commended but procedurally defeated.[51] It is intended to alleviate the harsh consequences of the statute of limitations when an action, through no fault of the plaintiff, is technically barred.[52] That said, the Savings Statute only applies to limitations periods under Title 10, not to specialized statutory proceedings with their own mechanisms, as is the case here.[53] The Savings Statute argument also

---

[50] D.I. 16 at 28–31.

[51] *See Reid v. Spazio,* 970 A.2d 176, 180 (Del. 2009) (citing *Vari v. Food Fair Stores, New Castle, Inc*., 205 A.2d 529, 530 (Del. 1964)); *Gosnell v. Whetsel,* 198 A.2d 924, 926 (Del. 1964).

[52] *See Marvel v. Prison Industries*, 884 A.2d 1065 (Del. Super. Ct. 2005).

[53] *Nationwide Mut. Ins. Co. v. Am. Indep. Ins. Co.*, 2018 WL 2263653 (Del. Super. May 17, 2018); see *Christiana Hosp. v. Fattori*, 714 A.2d 754 (Del. 1998) (holding that Delaware's savings statute, 10 Del. C. § 8118, does not apply to medical malpractice actions governed by 18 Del. C. § 6856); *see also*, *Huffington v. T.C. Grp., LLC*, 2012 WL 1415930 (Del. Super. Ct. Apr. 18, 2012) (holding that the Savings Statute does not apply to a Blue Sky securities claim because the limitations period is contained in the substantive statute, not Chapter 81, and the plaintiff's strategic forum selection did not warrant application of the statute). Delaware courts have declined to apply the savings statute to

fails independently because BRG filed its Delaware complaint before the Tennessee proceedings concluded. BRG was running parallel proceedings in two states rather than refilling in Delaware after an adverse termination in Tennessee.

### 3. Equitable Tolling Does Not Apply

BRG's equitable tolling argument also fails. Equitable tolling "is a doctrine used by courts to prevent a statute of limitations from running after a claim has accrued."[54] In Delaware, "equitable tolling may apply: (1) where the defendant misled the plaintiff, (2) where the plaintiff was prevented from asserting his rights in some extraordinary way, and (3) where the plaintiff has timely asserted his rights mistakenly in the wrong forum."[55] Equitable tolling is reserved for extraordinary

---

extend the one-year confirmation period under 10 Del. C. § 5713. In *Stoltz Management of Delaware, Inc. v. Entrata, Inc.*, the Superior Court held that neither equitable tolling nor the Delaware Savings Statute can be used to toll a specific contractual or statutory time limitation provision. 2026 WL 252662, at *4 (Del. Super. Ct. Jan. 30, 2026).

[54] *Owens v. Carman Ford, Inc.,* 2013 WL 5496821, at *2 (Del. Super. Ct. Sept. 20, 2013) (citing *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005)).

[55] *Id.* at *3 (citing New Castle Cty. v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir. 1997); *McLeod v. McLeod,* 69 A.3d 371 (Del. 2013)). While Delaware the Supreme Court and Court of Chancery decisions generally describe equitable tolling in broader terms of fairness, diligence, the more specific three-part formulation frequently cited by Delaware Superior Courts derives from federal equitable-tolling principles. Given that BRG seeks confirmation under the FAA, it is appropriate to look to federal authority applying equitable tolling, particularly where Delaware appellate courts have not adopted a conflicting standard.

circumstances. The doctrine applies when a litigant diligently pursues its rights but is prevented from timely filing by circumstances beyond its control. It does not apply merely because a party later regrets a strategic litigation decision.

The Delaware Supreme Court's decision in *IAC/InterActiveCorp v. O'Brien* is the controlling authority on this issue.[56] In this decision, the Court recognized that the existence of "unusual conditions or extraordinary circumstances" may justify declining to apply a statute of limitations by analogy when evaluating whether a plaintiff's delay in filing suit was unreasonable.[57] Although the Court did not provide a precise definition of what constitutes "unusual conditions or extraordinary circumstances," it reviewed and cited several non-dispositive factors for courts to consider in making that determination.[58] Those factors include:

1. whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired;
2. whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances;
3. whether the delay in filing suit was attributable to a legal determination in another jurisdiction;
4. the extent to which the defendant was aware of, or participated in, any prior proceedings; and

---

[56] 26 A.3d 174, 177 (Del. 2011).

[57] *Id.*

[58] *See IAC/InterActiveCorp*, 26 A.3d 174 (Del. 2011).

5. whether, at the time this litigation was filed, there was a bona fide dispute as to the validity of the claim.[59]

Here, BRG was not prevented from filing a timely confirmation action in Delaware. To the contrary, BRG consciously chose to pursue confirmation in Tennessee. That choice may have appeared reasonable at the time, but it remained BRG's choice. The Tennessee courts did not prevent BRG from filing in Delaware. Neither did SAM. No external obstacle foreclosed a timely Delaware filing.

BRG argues that it diligently pursued confirmation of the award and should not be penalized for litigating in a forum that ultimately proved unsuccessful.[60] The Court does not question BRG's diligence. But diligence alone does not establish equitable tolling. The doctrine requires both diligence and extraordinary circumstances outside the litigant's control. The possibility that a court may later determine it lacks jurisdiction is a litigation risk borne by every plaintiff. If that possibility alone justified equitable tolling, the doctrine would become obsolete. Because BRG was not prevented from filing a timely Delaware action by circumstances beyond its control, equitable tolling does not apply.

---

[59] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 770 (Del. 2013).

[60] *See generally* D.I. 16.

## III.   CONCLUSION

Pursuant to 10 Del. C. § 5702, the Federal Arbitration Act governs BRG's petition to confirm the arbitration award.  Under the FAA, a petition to confirm an arbitration award must be filed within one year of the award's issuance.  BRG did not commence this action until more than two years after the arbitrator issued the final award.  Because BRG's petition was filed outside the FAA's one-year limitations period and no tolling doctrine preserves its claim, the Amended Complaint is time-barred.

For the foregoing reasons, SAM's Motion to Dismiss is GRANTED.  The Amended Complaint is DISMISSED with prejudice.

This decision is subject to exceptions, which may be filed under Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery