■ ANN LaRusso, Appellant, v HARRY I. KATZ, EsQ., et al., Respondents. [818 NYS2d 17]—

Judgment, Supreme Court, Bronx County (Howard R. Silver, J.), entered November 14, 2005, dismissing the complaint, and bringing up for review an order, same court and Justice, entered April 11, 2005, which granted defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated. Appeal from the aforesaid order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Defendants represented plaintiff and her husband in a personal injury action in Bronx County captioned *LaRusso v Valentine* (the Valentine action). The facts of that action are relevant to the malpractice action that is the subject of this appeal.

Plaintiff was a passenger in a vehicle driven by her husband, John LaRusso. This vehicle was a "loaner" from nonparty Metro Toyota, which was performing repair work on the LaRusso vehicle. Mr. LaRusso told the police at the scene of the accident that he was traveling in the right lane of Pelham Parkway West when the car immediately in front of him "suddenly swerved to the left," revealing a vehicle operated by one Valentine "stopped in the road." He also told the police he did not have enough time or space to get out of the way and he struck the Valentine vehicle in the rear.

Defendant Katz initially represented both plaintiff and Mr. LaRusso in the Valentine action. When Valentine counterclaimed against Mr. LaRusso, he obtained separate counsel to represent him solely on that counterclaim.

At his deposition in the Valentine action, Mr. LaRusso testified that he was traveling westbound in the right lane of the three-lane Pelham Parkway. He was proceeding at approximately 40 miles per hour (mph) in light traffic when the vehicle traveling approximately two car lengths ahead of him "veered to the right to get off the exit at [Interstate] 95 North." He observed the Valentine vehicle approximately two car lengths away on the right shoulder of the road, "backing down off the shoulder" and into the right lane of Pelham Parkway in which he was traveling. He tried to swerve his car to the left to avoid the Valentine vehicle, but the right front end of his car struck the left rear bumper of the Valentine vehicle hard enough to deploy the airbags in his vehicle. Mr. LaRusso stated that approximately five seconds elapsed from the time he first observed the Valentine vehicle to the time he struck it.

Valentine refused to appear for a deposition despite repeated demands, and was ultimately precluded from offering testimony at trial. A note of issue was filed and the matter transferred to Bronx County Civil Court pursuant to CPLR 325 (d).

Counsel representing Mr. LaRusso on Valentine's counterclaim moved for summary judgment dismissing the counterclaim. This motion was opposed by defendant Katz, P.C., arguing that, based upon his deposition testimony, a jury could reasonably determine that Mr. LaRusso could have taken measures to avoid the accident, and thus could assess a percentage of liability against him. Katz also noted that Valentine's policy limits were $10,000 and that Mr. LaRusso's policy limits were $100,000. The IAS court denied the motion.

Defendants thereafter moved to withdraw as counsel for the LaRussos in the Valentine action because of threats made against defendant Katz by Mr. LaRusso. The unopposed motion was granted and new counsel for the LaRussos was substituted in the Valentine action. New counsel thereafter settled the Valentine action for $10,000, the full amount of the policy coverage.

Plaintiff commenced this action against defendants, arguing the failure to name Metro Toyota as a defendant in the Valentine action, or to commence a separate action against them on the theory of vicarious liability, constituted legal malpractice. Further, plaintiff argued that defendants' opposition to Mr. LaRusso's motion for summary judgment in the Valentine action was an admission that there was a basis in the record to conclude Mr. LaRusso was partly responsible for causing the accident that culminated in plaintiff's injuries, resulting in a conflict of interest.

Defendants moved for summary judgment dismissing the complaint, arguing, in an affirmation submitted by defendant Katz that plaintiff failed to demonstrate she sustained actual damage from the failure to commence an action against Metro Toyota. He also averred that the record in the Valentine action demonstrates Mr. LaRusso consistently maintained he was not responsible for the accident.

In opposition, plaintiff argued that defendants were aware of the potential conflict of interest in their representation of both LaRussos, particularly given the conflicting statements Mr. LaRusso made to the police at the scene, his deposition testimony and the allegations made by defendants in opposition to Mr. LaRusso's motion to dismiss the counterclaim against him. Plaintiff further argued that defendants violated Code of Professional Responsibility DR 5-105 (22 NYCRR 1200.24), particularly since they had never discussed the implications of dual representation with the clients. Plaintiff argued she suffered actual damages since the statute of limitations had run on commencing an action against Metro Toyota. She requested that the motion for summary judgment be denied as issues of fact existed regarding Mr. LaRusso's responsibility for the accident. Additionally, plaintiff argued that defendants' moving papers were insufficient because they were supported merely by the affirmation of defendant Katz, and not an affidavit.

The IAS court granted the motion to dismiss, finding that both LaRussos consistently maintained Valentine was responsible for the accident and defendants reasonably relied on this in choosing a strategy to represent both clients. The court

refused to rely on the police report for the purpose of determining whether there were issues of fact as to Mr. LaRusso's liability, finding it inadmissible hearsay. It further found that only by pure speculation could one conclude that but for the claimed negligence of defendants, plaintiff would have been successful in an action against Metro Toyota. The court did not address plaintiff's argument that defendants' motion papers were insufficient because they were supported by an affirmation instead of an affidavit.

A motion for summary judgment must be supported by an affidavit from a person having knowledge of the facts, as well as the pleadings and other available proof demonstrating that a cause of action has no merit (CPLR 3212 [b]). Although an attorney is authorized to submit an affirmation in lieu of an affidavit in most situations (CPLR 2106), "even those persons who are statutorily allowed to use such affirmations cannot do so when they are a party to an action" (*Slavenburg Corp. v Opus Apparel*, 53 NY2d 799, 801 n [1981]). Since attorney Katz was a named defendant in this action, "his submission of an affirmation instead of an affidavit was improper, and its contents should have been disregarded by the Supreme Court, thereby rendering the opposing papers insufficient to defeat the plaintiff's motion" (*Pisacreta v Minniti*, 265 AD2d 540, 540 [1999]).

On the merits, moreover, plaintiff's opposition papers were sufficient to raise triable issues of fact to defeat defendants' motion for summary judgment.

"An action for legal malpractice requires proof of three elements: (1) that the attorney was negligent; (2) that such negligence was a proximate cause of plaintiff's losses; and (3) proof of actual damages" (*Brooks v Lewin*, 21 AD3d 731, 734 [2005], *lv denied* 6 NY3d 713 [2006]). To establish proximate cause, "a plaintiff must demonstrate that but for the attorney's negligence, she would have prevailed in the underlying matter or would not have sustained any ascertainable damages" (*id.*).

DR 5-105 (a) requires attorneys to decline employment where the case "would be likely to involve the lawyer in representing differing interests." DR 5-105 (c) permits a lawyer to represent multiple clients if a disinterested lawyer believes the lawyer can competently represent each party's interests "and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved."

There is no question that defendant Katz did not inform the LaRussos of the risks inherent in dual representation of a passenger and driver in an automobile accident. However, disclosure

alone does not, of itself, resolve the issues created by dual representation. "Because dual representation is fraught with the potential for irreconcilable conflict, it will rarely be sanctioned even after full disclosure has been made and the consent of the clients obtained" (*Greene v Greene*, 47 NY2d 447, 451-452 [1979]).

While defendants argue they exercised the competent judgment of a skilled attorney in representing both LaRussos because both maintained that Mr. LaRusso was free from negligence, plaintiff, who sustained the more extensive injuries, testified she did not see what happened. She utilized the police report in her motion papers, not to assert the truth of the facts related therein, but to indicate the existence of facts concerning Mr. LaRusso's liability. "Hearsay evidence may be sufficient to demonstrate the existence of a triable fact where it is not the only evidence submitted" (*Navedo v 250 Willis Ave. Supermarket*, 290 AD2d 246, 247 [2002]), and the IAS court should have considered it in making its determination. The conflicting statements of Mr. LaRusso, both in the police report and at his deposition, as well as the position taken by defendants in opposing Mr. LaRusso's motion to dismiss, certainly demonstrate defendants were aware of the potential conflict. Defendants even recognized the need to have additional counsel simultaneously representing Mr. LaRusso on the counterclaim. Yet even at that point, they did not advise the LaRussos of the possibility of the conflict.

Plaintiff argues that the failure of defendants to timely commence an action against Metro Toyota was the proximate cause of her injury with respect to the malpractice action. Metro Toyota loaned the vehicle to Mr. LaRusso and, plaintiff posits, would thus be vicariously liable for her injuries as a result of her husband's negligence. Metro Toyota had a $1 million policy but plaintiff was forced to settle for $10,000, the maximum of the Valentine policy, although her damages were well in excess of that amount.

Upon these circumstances, plaintiff pleaded sufficient "factual allegations which, if proven at trial, would demonstrate that counsel had breached a duty owed to the client, that the breach was the proximate cause of the injuries, and that actual damages were sustained" (*Dweck Law Firm v Mann*, 283 AD2d 292, 293 [2001]). Concur—Tom, J.P., Andrias, Friedman, Williams and Sweeny, JJ.