*798 OPINION OF THE COURT
Alan D. Scheinkman, J.[1]
In this matrimonial action, defendant seeks to disqualify Ellen Jancko-Baken, Esq.[2] as counsel for plaintiff based on his contention that she represented plaintiff in a “collaborative law” process prior to the commencement of this action.
The parties were married on August 28, 1998. They have three minor children. Defendant moved out of the marital residence on October 1, 2011. At the time defendant moved out of the residence, he was working as an attorney at a law firm earning a base salary of approximately $260,000 and plaintiff was volunteering as a social worker and earning no income.
In late October of 2011, plaintiff contacted defendant to notify him she had retained counsel to commence a divorce and was interested in pursuing a collaborative law process. This is a form of dispute resolution in which the parties retain counsel specially trained in collaborative law and enter into a contract to negotiate a settlement without involving the court or a third-party arbitrator. As part of the process the parties may agree to engage neutral experts to assist them, such as accountants or appraisers.
One of the principal features of the process is that, if the matter is not resolved, the attorneys who represented the parties in the unsuccessful effort to collaborate upon a settlement may not represent the parties in the ensuing litigation. The theory is that prelitigation posturing is eliminated and clients have a greater degree of influence in candid negotiations in which the clients participate directly (see Cochran, Legal Ethics and Collaborative Practice Ethics, 38 Hofstra L Rev 537, 542 [2009]). Another way of looking at it is that the prospective expense of having to hire new lawyers if the matter has to go to court will motivate the parties to continue working toward a mutually agreeable resolution (see Office of Court Administration, Col *799 laborative Family Law Center, http://www.nycourts.gov/ip/ collablaw/index.shtml). Having counsel agree to absent themselves from any future litigation makes it clear that counsel are committing themselves to the process of dispute resolution by limiting their engagement to that endeavor and counsel have an economic incentive to stick with the process (Lavi, Can the Leopard Change His Spots?! Reflections on the ‘Collaborative Law’ Revolution and Collaborative Advocacy, 13 Cardozo J Conflict Resol 61, 68-69 [2011]). Further, counsel have no incentive to abandon the process since their role, and their fees, would end. Conversely, counsel have no personal monetary incentive to encourage litigation.
On November 1, 2011, Ms. Jancko-Baken wrote to defendant to advise him that the firm of Fredman Baken & Kosan LLP had been retained by plaintiff. Ms. Jancko-Baken’s letter expressed her client’s desire to resolve issues relating to the divorce using the collaborative law process. However, the letter also stated plaintiff’s insistence that her immediate interim financial concerns be addressed before moving forward with the process, to wit, “While this need not be, and in fact, should not be, adversarial, if the temporary issues are not addressed and resolved immediately, I see no other option” (affirmation of Daniel Molinoff, Esq., dated Mar. 5, 2012 [Molinoff affirmation], exhibit A). The retainer agreement between plaintiff and her attorneys expressly contemplated representation in settlement negotiations and representation in contested litigation. As to the latter, the retainer agreement covered such matters as the payment of a trial retainer, disbursements for deposition and court transcripts, and applications to the court for an award of legal fees.
Defendant then retained counsel trained in collaborative law and signed a collaborative law retainer with the firm of Kramer Kozek. The retainer agreement between defendant and his counsel was entitled limited scope retainer for collaborative law. While it covered some litigation-related activities, such as the expenses of court reporters and stenographers, it specifically stated that the law firm “will not be permitted to represent you in any court-related matter against your spouse” and that the firm had no obligation to represent the defendant in any litigation or appeal.
The parties and their counsel met on November 17, 2011. Plaintiffs counsel prepared and circulated an agenda for the meeting. One of the first issues on the agenda for the meeting *800 was a review of the “participation agreement.” In collaborative law, the participation agreement is the contract which binds the parties to abide by the rules of the process. The agenda recited that the parties and counsel were to discuss the ground rules of collaborative law meetings, describe the alternatives to collaborative law, describe the roles of the parties and counsel in the process, and ask each person why he or she has chosen to participate in the collaborative law process and record the answers. After this process was complete, the agenda called for: “Ask if there are any final questions and then all sign the Participation Agreement in four duplicate originals.” According to the agenda, after the collaborative law process was confirmed and established, the parties were to proceed to resolve the immediate issues, establish timetables for financial disclosure, discuss a valuation date, determine the agenda for the next meeting, and develop their “homework” assignments.
It is undisputed that the participation agreement was not signed on November 17, 2011. In his affirmation in support of the motion, defendant’s present counsel, who was not present at the meeting, states (without providing any factual basis for his assertion): “apparently it was understood that this would be done at the next meeting, which was scheduled for two weeks later” (Molinoff affirmation 1i 24). According to defendant, the parties read aloud the ground rules and repeated their statements to each other so that each understood what the other had said. Defendant states that after two hours of discussion a substantial amount had been accomplished but the “Participation Agreement was not signed by the parties and was left, instead to the next session, which was scheduled for November 30, 2011” (affirmation of Mitchell G. Mandell, dated Mar. 5, 2012, 1i 8 [Mandell affirmation]).[3] Defendant does not assert what was discussed in relation to the participation agreement nor provide an explanation as to why the execution of the document was deferred.
Plaintiffs attorney alleges that the participation agreement was not signed because defendant refused to enter into an *801 interim support agreement acceptable to plaintiff (affirmation of Ellen Jancko-Baken, dated Mar. 22, 2012,1i 14 [Jancko-Baken affirmation]). Plaintiff herself states that her attorney told her that an honest commitment to the collaborative law process could not be made if one party perceived that the other party was unwilling to make an interim support arrangement so that the parties could focus discussions on the ultimate resolution of the issues (affidavit of Monica Mandell, sworn to Mar. 23, 2012, 1Í 6). She asserts further that she agreed with her attorney that they would not sign the participation agreement until they were both satisfied that defendant made an honest commitment to the process by agreeing to a resolution of the interim support dispute {id. H 7).
While the minutes of the meeting of November 17, 2011 prepared by the plaintiffs counsel (Molinoff affirmation, exhibit F) confirm that interim support was discussed without a firm resolution, and that review of the participation agreement was placed on the agenda for the next meeting, the minutes do not indicate that there was any discussion of the participation agreement at all, much less any discussion as to why the parties had not signed it. Defendant denies plaintiffs attorney ever stated that the start of collaborative discussion was being delayed due to the dispute over interim support; defendant also denies that the plaintiffs counsel ever disclaimed that the collaborative law process had not, in fact, started (Mandell affirmation 1f 9). This being said, defendant does not deny knowing that the November 17, 2011 meeting ended without the participation agreement being signed. He also does not deny that he proceeded with the discussions of interim issues and other matters on November 17, 2011 knowing that the participation agreement had not been signed.
Defendant concedes that he was advised prior to the start of the next meeting that plaintiffs counsel would not sign the participation agreement because she wanted to reserve the option of moving for interim support if the collaborative process fell apart {id. H 10). Despite having knowledge of the position of plaintiffs counsel, defendant elected to proceed with the second meeting, on the theory that “we were clearly working within the collaborative process even without a signed Participation Agreement” {id. H 11).
The second meeting proceeded but the issue of temporary support was not resolved and the participation agreement was not signed. A third meeting was held with the same result. *802 Plaintiff commenced this action for divorce on December 15, 2011.
In support of his motion to disqualify plaintiffs counsel, defendant argues that by attending meetings with lawyers trained in collaborative law and discussing matters that were to be part of the collaborative process, the parties engaged in the collaborative law process, notwithstanding the lack of a signed participation agreement. Defendant contends that the attorney for the plaintiff should be disqualified because entering into the collaborative law process necessitates that the lawyers retained for that purpose may not litigate the matter should the collaborative process break down. Defendant asserts that by participating in the collaborative process, plaintiff’s counsel learned confidential information and must be disqualified. He states that to allow plaintiffs counsel to evade disqualification because she did not sign the participation agreement, though she did participate in three negotiation sessions, “would render the disqualification provision illusory” (Mandell affirmation 1HÍ 29-30).
In opposition to the motion, plaintiffs counsel contends that the cornerstone of the collaborative law process — the bright-line indicia of whether the parties have entered into such a process — is the participation agreement (Jancko-Baken affirmation 1i 19). She claims that the parties never got to the point of signing a participation agreement because of the dispute over temporary support (id.). Counsel argues that collaborative law is a creature of contract and since the parties never entered into a participation agreement, there is no basis to disqualify her.[4] Plaintiff submits an affirmation from Lawrence Jay Braunstein, Esq., who is a trained collaborative law attorney and member of the Board of Managers of the Rockland-Westchester Collaborative Lawyers Association, a group of attorneys in those two counties who have all had collaborative law training. He asserts that parties cannot be said to have engaged in a collaborative law process without a signed participation agreement being in place. Without such an agreement, he says, “the parties never entered into the collaborative law process, no matter how long *803 or how intensely the parties may have discussed the notion of ‘collaborating’ ” (affirmation of Lawrence Jay Braunstein, dated Mar. 22, 2012, IF 2).
The collaborative law process is a relatively new concept and there are few New York decisions touching on it (see H.K. v A.K., 35 Misc 3d 1210[A], 2012 NY Slip Op 50639DJ] [Sup Ct, Monroe County 2012] [holding that a breach of the disclosure provisions of a collaborative law agreement does not provide a new or additional basis for voiding a separation agreement beyond the legal standards which generally govern the validity of marital agreements]). However, it cannot be denied that collaborative law is, at least for now in New York, a voluntary process. There is no room to argue that, whatever the advantages of collaborative law might be, a court could compel parties to engage in such a process without their consent. Even in the states which have statutes providing for a collaborative matrimonial law process, entry into the process is dependent upon the execution of an agreement by the parties (see NC Gen Stat Ann § 50-72; Tex Family Code Ann § 15.102). For example, Texas law clearly states a collaborative family law process begins when the parties sign a collaborative family law participation agreement and that the court may not order a party to participate in a collaborative law process over that party’s objection (id.).
While the parties devote considerable energy to debating whether they did or did not enter upon a collaborative law process, this court views that discussion, while interesting, as a diversion from the real issue at hand — whether there is an agreement between the parties, enforceable by defendant, that plaintiffs counsel may not represent her in a contested matrimonial action between the parties.
It seems manifest that parties to any dispute or litigation— matrimonial matters included — are free, if they wish, to engage in settlement discussions, whether before, during or after the commencement of litigation. Often times, settlement discussions proceed without any written agreement as to the ground rules for the discussion. In the absence of a written agreement, evidence of the parties’ settlement offers or even evidence of conduct or statements made during compromise negotiations are inadmissible (CPLR 4547). It is also evident that the parties have wide latitude in establishing the methods, ground rules, and conditions of any settlement or compromise negotiations. In matrimonial matters, parties could opt for direct negotia *804 tions (either with or without counsel), mediation (whether conducted by a judge, nonjudicial staff, a court-annexed mediator, a professional mediator, or even a third party such as a family member or friend), or even, subject to public policy limitations, arbitration. There is nothing particularly unusual about some of the major components of collaborative law. For one, it is not uncommon for the parties to agree to keep their settlement discussions between themselves; as noted, the law so provides anyway. For another, it is not uncommon for the parties to agree upon financial experts, such as accountants and experts, to assist both of them; parties in active litigation regularly agree to jointly retain a common appraiser. It is also common for mediators and arbitrators to have special training, just as collaborative lawyers do.
Perhaps the most distinguishing feature of collaborative law, however, is the commitment of counsel not to represent their clients in future litigation. Disqualification of a party’s chosen counsel is a severe remedy which is ordered by courts only in narrow circumstances where counsel’s conduct would taint the trial (see Matter of Dream Weaver Realty, Inc. [Poritzky — DeName], 70 AD3d 941 [2d Dept 2010]). In general, disqualification is ordered only where a prior attorney-client relationship existed and the former and current representation is both adverse and substantially related (id.) or where the concerns of the advocate-witness rule are implicated (see S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437 [1987]). The courts are most reluctant to interfere with a party’s selection of counsel: “A party’s entitlement to be represented in ongoing litigation by counsel of his or own choosing is a valued right which should not be abridged absent a clear showing — on which the party seeking disqualification carries the burden— that counsel’s removal is warranted” (Goldstein v Held, 52 AD3d 471, 471-472 [2d Dept 2008]). The right to choose one’s own lawyer has particular relevance in matrimonial and family law matters which are personal and intimate in nature and in which a relationship marked by trust and confidence between attorney and client is vital.
Here, defendant suggests that disqualification is warranted because plaintiffs counsel, by her participation in the collaborative law process, became privy to confidential information. Putting aside that defendant does not identify what confidential information was disclosed and does not explain how plaintiff’s counsel’s access to such information would cause him prejudice, *805 defendant’s contention is, in the absence of a binding confidentiality agreement, rather extraordinary. Collaborative law is, at bottom, a settlement technique. It is a quite common, if not everyday, practice for attorneys and clients to share information and engage in settlement dialogues which take a myriad of forms, such as direct communication, mediation, neutral evaluation and others. It would be quite astounding if an attorney, having obtained information during settlement negotiations, would then be disqualified from participation in litigation. As previously noted, the statute protects the confidentiality of the content of the negotiations and does so in order that settlement negotiations be fostered. It would be a distinct chill to settlement negotiations if attorneys had to avoid obtaining information from opposing parties and counsel in order to avoid being disqualified. Clients would be ill-served in that they might well decline to participate in candid negotiations lest they be deprived of the services of their trusted counsel and put to the expense, often considerable, of having to compensate another lawyer to become familiar with the matter, as well as suffer delay in the process. Defendant has cited no authority for the proposition that an attorney’s exposure to confidential information during settlement negotiations compels the disqualification of counsel. This court declines to create one.
This said, it is also manifest that, absent some public policy constraint, parties are free to develop and implement their own ground rules for settlement negotiations. The collaborative law participation agreement that was drafted for these parties is but an illustration of an agreement to govern settlement discussions. But settlement discussions may — and often do — proceed without a written, or even oral, agreement on ground rules.
In essence, defendant argues that plaintiff and her counsel agreed to the terms of the participation agreement by their actions in participating in meetings with defendant and his counsel. Plaintiff and her counsel argue that they did not so agree and that any such agreement, to be enforceable, must be in writing.
While agreements to arbitrate need not be signed, it is generally considered necessary for there to be a written arbitration provision to which the parties have manifested their consent (see CPLR 7501; see Ernest J. Michel & Co. v Anabasis Trade, 50 NY2d 951 [1980]). No case has been cited, or found by the court, in this state in which a court held that agreements to mediate must be in writing or signed to be enforceable. There is, *806 however, a nuance to this case. Since this is a matrimonial action, no agreement made before or during the marriage is enforceable within the action unless the agreement has been duly signed and acknowledged by the parties (Domestic Relations Law § 236 [B] [3]; Matisoff v Dobi, 90 NY2d 127 [1997]). While there are cases in which courts have directed the parties to matrimonial litigation to engage in mediation, in such cases the mediation provision was embedded in a valid and enforceable matrimonial agreement (see Edwards v Poulmentis, 307 AD2d 1051 [2d Dept 2003]). The courts cannot enforce provisions for alternative dispute resolution which are contained in writings executed without compliance with the formalities required by statute (see Arabian v Arabian, 79 AD3d 517 [1st Dept 2010] [provision for arbitration in rabbinical court unenforceable where not set forth in signed, acknowledged writing]). Nor may the courts enforce resolutions reached in mediation conducted during marriage where the resolutions are not embodied in duly signed and acknowledged writings (see Wetherby v Wetherby, 50 AD3d 1226 [3d Dept 2008]).
Though it is true that defendant does not here seek to compel plaintiff to engage in collaborative law, he is seeking to enforce the provision in the unsigned participation agreement requiring plaintiffs counsel to step aside from representing plaintiff in a future contested matrimonial action, specifically this matrimonial action. This he may not do.
The participation agreement prepared for these parties (Molinoff affirmation, exhibit E) contains an article VIII which states:
“Unless otherwise agreed, prior to reaching final agreement on all issues, no Complaint will be filed or served, nor will any other motion or document be prepared or filed which would initiate Court intervention.
“The parties understand that their Collaborative Law attorneys’ representation is limited to the Collaborative Law process .... [T]he parties mutually agree that they will not authorize their collaborative attorneys to represent them or appear as counsel for them with respect to this matter in any Court or on any Court filings other than a mutually agreed upon submission of the documents necessary to finalize the parties’ divorce.”
The court notes that article IX of the participation agreement provides that either party can opt out of the collaborative pro *807 cess at any time, though, absent an emergency, a 30-day waiting period is imposed before “any Court hearing” so that the other party can retain counsel. Additionally, article VII states that a temporary or interim agreement, if made, should be reduced to a “duly signed writing” which, should a party withdraw from the process, may be presented to the court as the basis for an order.
The participation agreement prepared for the parties contains signature blocks for signatures of the parties and their counsel as well as form acknowledgments to be filled in by the notaries public before whom the signatures of the parties were to be acknowledged.
It is undisputed that neither plaintiff nor defendant ever signed the participation agreement and neither did their counsel. While defendant may have attended the initial November 17, 2011 meeting with the reasonable expectation that both parties intended to sign the participation agreement at that meeting, he certainly was not entitled to perceive that the execution of the agreement was guaranteed. Until the agreement was duly executed, either party could change his or her mind. The agenda for that meeting provided that the execution of the agreement would be taken up before the item entitled, “Resolve immediate issues” (Molinoff affirmation, exhibit D). But it is undisputed, and confirmed by the meeting minutes (id., exhibit E), that immediate issues involving interim support, automobiles, and jewelry were discussed, although the participation agreement was left unsigned.[5] If the due execution of the participation agreement was that important to defendant, he could have preserved his position by insisting that substance not be discussed until the agreement was signed. He acknowledges that he was told prior to the second meeting that plaintiffs counsel was refusing to sign the agreement and despite his being “dismayed” with that, he proceeded with two more meetings.
The court concludes that, because the participation agreement was not signed and acknowledged by the parties, it is unenforceable in this matrimonial action.
In view of this determination, the court need not consider whether any of the provisions of the participation agreement *808 violate any ethical restrictions or public policy considerations. Rule 5.6 (a) (2) of the Rules of Professional Conduct (22 NYCRR 1200.0), as adopted in New York, prohibits an attorney from participating in offering or making an agreement in which a restriction on a lawyer’s right to practice is part of the settlement of a client controversy. In Jarvis v Jarvis (12 Kan App 2d 799, 758 P2d 244 [1988]), as part of a separation agreement, the wife agreed to a “condition precedent” that she would never again retain a particular attorney to advise, her with respect to either the pending divorce case or a future litigation. After the divorce, the wife retained the named attorney in order to seek an increase in support and to invalidate the restriction on the attorney’s retention. The court invalidated the restriction, holding that it indirectly restricted the attorney’s right to practice law as a condition to the divorce settlement and it limited the wife’s freedom in choosing an attorney. However, Jarvis was distinguished by the First Department in Feldman v Minars (230 AD2d 356 [1st Dept 1997]), where the Court agreed with academic criticism of the prohibition against restrictive covenants, including the observation that willing participants should be able to agree as they wish. The Appellate Division upheld a settlement which was induced by an agreement by plaintiffs attorneys not to represent other clients in similar litigation with the settling defendants. Similarly, in Blue Cross & Blue Shield of N.J. v Philip Morris, Inc. (53 F Supp 2d 338 [ED NY 1999]), the court upheld an agreement in which plaintiffs promised not to seek to disqualify the law firm for defendant based on the firm’s ongoing representation of plaintiffs in unrelated matters, in exchange for the law firm’s promise not to appear in one of three coordinated actions brought by plaintiffs.
It has been suggested that a collaborative law participating agreement in which counsel agree not to participate in contested litigation representation does not implicate the provisions of rule 5.6 (a) (2) since the participating agreement is not itself the settlement of a client controversy (see Cochran, Legal Ethics and Collaborative Practice Ethics, 38 Hofstra L Rev 537, 566 [2009]). While this is so, the distinction may be unsatisfying as it is an agreement as to the process for settlement. More convincing may be the point that the rule was intended to prohibit a lawyer from agreeing not to represent third parties (id.). It seems clear that a lawyer could reasonably agree with a matrimonial client to limit the scope of the representation to the negotiation of a settlement and exclude an obligation to provide *809 litigation representation (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.2 [c]). Whether such an agreement can be enforced by the client’s adversary is a matter for another day.
It is hereby ordered that defendant’s motion is denied in its entirety; and it is further ordered that all other requests for relief not specifically addressed herein are denied.

. This action was originally assigned to Justice Linda Christopher. However, due to Justice Christopher’s extended unavailability for medical reasons, the action was reassigned to this Justice.

. Ms. Jancko-Baken is a member of the law firm of Fredman, Baken & Kosan LLE This Justice was a member of a predecessor firm, a relationship which ended in December 1996, with Ms. Jancko-Baken being an associate attorney at the time. While disclosure of this long-ago relationship is made, disqualification is not required (see Advisory Comm on Jud Ethics Op 00-67 [2000]) and the court is confident in its ability to decide all matters in this action fairly and impartially.

. The court notes that defendant submitted an affirmation, rather than an affidavit. Since defendant is a party to the action, the use of an affirmation is inappropriate (see CPLR 2106; LaRusso v Katz, 30 AD3d 240, 243 [1st Dept 2006]). But since the plaintiff has not objected to the defendant’s use of an affirmation, and the court would need to permit the defendant to renew the motion to cure the defect (see Brightly v Dong Liu, 77 AD3d 874 [2d Dept 2010]), thus delaying the resolution of this issue further, the court has elected to disregard the defect this time.

. In the opposition papers, plaintiff inserts requests for the imposition of sanctions and an award to her of counsel fees. These requests are not addressed as plaintiff did not give proper notice of an application for affirmative relief and, in any event, the court does not view defendant’s motion as frivolous and plaintiff failed to submit documentation detailing the services provided at an alleged cost of $6,957.40 nor a basis for the request of $25,000 in legal fees.

. While CPLR 4547 would seemingly bar consideration of these settlement negotiations, neither party has objected to the court’s consideration of the allegations made by each party as to the discussions during their settlement efforts.